Lonnie D. Giamela (SBN 228435)
Admitted Pro Hac Vice
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501
lgiamela@fisherphillips.com

Christopher M. Ahearn (SBN 239089)
Sean T. Kingston (SBN 276099)
Admitted Pro Hac Vice
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, CA 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152
cahearn@fisherphillips.com
skingston@fisherphillips.com

Attorneys for Defendant
Air Methods Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Cooley, *et al.*,<br><br>            Plaintiffs,<br><br>    v.<br><br>Air Methods Corporation, a Delaware corporation,<br><br>            Defendant. | Civil Action No:  2:19-CV-00850-PHX-DLR<br><br>**DEFENDANT AIR METHODS CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

FP 37258266.1

1

2

## <u>TABLE OF CONTENTS</u>

**I.     SUMMARY OF ARGUMENT** .................................................................................1

**III.    SUMMARY JUDGMENT STANDARD** ........................................................4

**IV.    LEGAL ARGUMENT**.................................................................................5

      ***A.     AMC is A "Common Carrier by Air"***........................................5

        1.     AMC's "Common Carrier" Status Relates to its Status as a "Part 135" Air Carrier. .................................................................5

        2.     As a Part 135 "Common Carrier", AMC Falls within the RLA Exemption .................................................................7

**V.     CONCLUSION** ........................................................................................12

FP 37258266.1

# TABLE OF AUTHORITIES

**Other Authorities**

D.O.L. Opinion Letter FLSA2005- 10NA (Sept. 16, 2005)------------------------------------9, 10

Federal Aviation Regulations ("FAR"), 14 C.F.R. Part 135 ------------------------- 1, 2, 5, 6, 9, 11

Federal Aviation Regulations 14 C.F.R. Part 91-------------------------------------------------- 1, 5, 6

**Federal Cases**

Air Evac EMS, Inc. v. Cheatham, 910 F.3d 751, 764 (4th Cir. 2018) ------------------------ 6, 7, 11

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ---------------------------------------- 4

Celotex Corporation v. Catrett, 477 U.S. 317, 327 (1986) ---------------------------------------- 4

Daly v. Volpe, 376 F.Supp. 987, 992 (W.D. Wash. 1974) ---------------------------------------- 11

Hendrickson v. Octagon Inc., 225 F. Supp. 3d 1013, 1024 (N.D. Cal. 2016)----------------------- 4

In re Rocky Mountain Holdings, LLC d/b/a Eagle Airmed of Ariz., 26 N.M.B. 132 (Jan.
  12, 1999) ---------------------------------------------------------------------------------------------- 9, 11

In re TriState CareFlight, LLC, 41 N.M.B. 55 (Apr. 14, 2014)------------------------------------ 9

McKinley v. Med-Trans Corp, 2010 WL 11530302 at *1 (E.D. Tex. Aug. 4, 2010) ------ 8, 9, 10

Med-Trans Corp. v. Benton, F.Supp.2d, 721 ----------------------------------------------------------- 7

Northwest Airlines v. Jackson, 185 F.2d 74 ----------------------------------------------------------- 5

Osborne v. Enchantment Aviation, Inc., 112 Fed. Appx. 673 (10th Cir. 2004) ------------ 8, 9, 10

Riegelsberger v. Air Evac EMS, Inc., 369 F.Supp.3d 901, 906 (E.D. Mo. 2019) ---- 1, 5, 6, 7, 11

Slavens v. Scenic Aviation 221 F.3d 1353 at *1 (10th Cir. 2000)---------------------------- 8, 9, 10

Thibodeaux v. Executive Jet Intern., Inc., 328 F.3rd 742--------------------------------------- 5, 7

United States v. Sterling Centrecorp Inc ("Sterling"), 208 F. Supp. 3d 1126, 1132 (E.D.
  Cal. 2016)------------------------------------------------------------------------------------------------- 5

Woolsey v. National Transp. Safety Bd., 993 F.2d 516, 524 (5th Cir. 1993) ------------------- 6, 7

**Federal Statutes**

29 U.S.C. § 201 -------------------------------------------------------------------------------------------- 1

29 U.S.C. § 207 -------------------------------------------------------------------------------------------- 5

29 U.S.C. § 213 ----------------------------------------------------------------------------------------- 1, 5

FP 37258266.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Federal Rules**
Federal Rules of Civil Procedure Rule 56 ------------------------------------------------------------- 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   SUMMARY OF ARGUMENT

AMC is a national provider of emergency air medical transport (via helicopter) to patients with life-threatening injuries and illnesses, also referred to as an "air ambulance" company. On February 8, 2019, Plaintiffs Kenneth Cooley, Jeremy LeMaster, Robert Needham and Jamie Collins (collectively "Plaintiffs"), employees of AMC, bring this putative collective action lawsuit alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq. See* Amended Verified Complaint, Filed Sept. 9, 2019, Doc. No. 85-1 (hereinafter the "Complaint"), ¶¶ 1-6. The primary thrust of Plaintiffs' claims against AMC is that they were not paid all overtime wages due under the FLSA. *Id.* at ¶ 3.

AMC is, however, exempt from the overtime provisions of the FLSA because it is, and at all relevant times was, a "carrier by air subject to the provisions of Title II of the Railway Labor Act ("RLA")." *See* 29 U.S.C. § 213(b)(3) (hereinafter, the "RLA Exemption"). Courts, as well as the National Mediation Board ("NMB") (which enforces the RLA) and the U.S. Department of Labor, have consistently held that air ambulance companies such as AMC fall squarely within the scope of the RLA Exemption. *Riegelsberger v. Air Evac EMS, Inc.*, 369 F.Supp.3d 901, 906 (E.D. Mo. 2019) (collecting cases and authorities). Importantly, AMC is certified as an air carrier under the more stringent Part 135 Certification by the Federal Aviation Administration, which is focused on safe operations for public and commercial operations of "common carriers".  Were Plaintiffs' theory to carry, air ambulance companies such as AMC, rather than being considered "common carriers" regulated under Part 135's more stringent standards, would be permitted to operate under Part 91 standards applicable to private aircraft operations, jeopardizing the safety of patients in need of critical and timely service.

Accordingly, Plaintiffs' overtime and estoppel claims fail as a matter of law. AMC, thus, requests this Court to grant its motion for partial summary judgment, enter judgment in its favor on Counts 1 and 3, and Count 2 to the extent it seeks overtime

1

premiums on off-the-clock claims, award AMC costs and attorneys' fees, and such other relief as this Court deems just.

## II.    STATEMENT OF RELEVANT FACTS

AMC is, and at all relevant times (February 8, 2016 through the present)[1] has been, an air ambulance company providing air medical transport services to critically ill or injured patients, usually in medically underserved rural areas. (Exhibit 1, at ¶ 2).  During the time period since February 8, 2016, AMC has consistently operated over 100 air medical bases across 48 states and transported patients within those states and across state lines. (Exhibit 1, at ¶ 3). During the time period from at least February 8, 2016 to the present, with the limited exception of small subsidiaries who have operated air charter helicopter tours (which have not, at any time, employed nurses or paramedics of any kind), AMC's sole business purpose has been, and continues to be, to provide services in the form of an air ambulance, deriving 100% of its revenue from air ambulance services. (Exhibit 1, at ¶ 4). During the time period from at least February 8, 2016 to the present, in order to operate as an air carrier, AMC has maintained, and continues to maintain, a Part 135 Certification issued by the Federal Aviation Administration, and AMC has held this certificate continuously since 1992. (Exhibit 1, at ¶ 5, and Exhibit A thereto).

Under this certificate, AMC is, and has been throughout the relevant time period, "authorized to operate as an air carrier and conduct common carriage operations in accordance with [the FAA.]" (Exhibit 1, at ¶ 6).

To provide individuals with access to emergency medical care, AMC markets its services to and collaborates with hospitals, emergency services providers, and EMS agencies, and has done so throughout the relevant time period. (Joint Stipulation of Facts,

---

[1] Under the FLSA, the limitation period on actions is two (2) years. 29 U.S.C. § 255(a). However Plaintiffs have alleged "willful" violations (Amended Complaint, at ¶120), and although AMC disputes that it engaged in any "willful" violations (or any violations at all), if Plaintiffs can prove such allegations, the limitation period would be extended to three (3) years. 29 U.S.C. 255 (a). Plaintiffs' original complaint was filed on February 8, 2019 (*see* Doc. 001), and so accordingly the "relevant time period" for purposes of this motion is February 8, 2016 through the present.

2

Doc. 100 ("Stipulation"), at ¶ 1).  AMC additionally, until recently, marketed and sold a membership program, under which members of the public could purchase memberships with AMC that would cover any out-of-pocket expenses related to an AMC helicopter transport. (Stipulation, at ¶ 1).  During the time period from at least February 8, 2016 to the present, AMC has charged a fee for the services it has provided to the patients it transports, and AMC continues to charge such fees. (Exhibit 1, at ¶ 7). During the time period from February 8, 2016 to the present, AMC has provided its services indiscriminately, without regard to a critically ill or injured patient's insured status, or any demographic attribute; and, AMC continues to do so. (Exhibit 1, at ¶ 8).  During the time period from February 8, 2016 to the present, it has been AMC's policy and practice (which has been regularly and faithfully implemented), pursuant to agreements with the government agencies and hospitals that have retained AMC's services, to serve any patient in need, regardless of his or her ability to pay. (Exhibit 1, at ¶ 12).

During the time period from at least February 8, 2016 to the present, an AMC medical flight crew has consisted of, and continues to consist of, one flight paramedic and one flight nurse (though in some cases, crews have consisted of 2 nurses). (Exhibit 1, at ¶ 9). During such time, the duties of AMC flight nurses and flight paramedics have included: providing pre-hospital advanced life support care to critically injured or ill patients from initial contact through the time care is relinquished at the hospital, including in-flight care. (Exhibit 2, at ¶¶s 2 and 3, Exhibit A, p. 10:22-11:5, 14:1-7, 14:13-22, 15:2-7, and 15:22-25, and Exhibits B, C, D, and E thereto). The duties of AMC flight nurses and flight paramedics during such time period have also included, but have not been limited to: assisting in pre-mission liftoff checklists and pilot assistance when needed; radio, navigational, and visual observation activities; conducting aircraft safety briefings as needed; complying with safety standards to assure safety of self, crewmembers, medical personnel, patient, bystanders, and equipment prior to liftoff; participating in patient and referring institution follow-up; and completing and submitting flight records. (Id.).  During the time period from at least February 8, 2016 to the present, the job duties

performed by medical flight crew, including Plaintiffs, have been, and remain, critical and integral to AMC's air ambulance services and to the safe flight operations of AMC's air ambulances. (Exhibit 1, at ¶ 10).  During the time period from at least February 8, 2016 to the present, medical flight crew have been, and remain, crucial to Defendant's operations, as without a medical flight crew, AMC would not be able to operate an air ambulance service. (Exhibit 1, at ¶ 11).

## III.   SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure Rule 56 ("FRCP"), summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law.  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.,* at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.,* at 251-52.

Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules*. Celotex Corporation v. Catrett,* 477 U.S. 317, 327 (1986).  One of the purposes of such a motion is to dispose of unsupported claims.  *Id.*, at 323-24.  Therefore, "after adequate time for discovery" the entry of summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Id.,* at 322.

Alternatively, the court can grant a motion for partial summary judgment. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."); *Hendrickson v. Octagon Inc.*, 225 F. Supp. 3d 1013, 1024 (N.D. Cal. 2016). A grant of partial summary judgment allows for the disposition of part of a claim or defense. *United*

4

1  *States v. Sterling Centrecorp Inc ("Sterling")*, 208 F. Supp. 3d 1126, 1132 (E.D. Cal.

2  2016); *Hendrickson*, *supra*, 225 F. Supp. 3d at 1024. "The standard that applies to a

3  motion for partial summary judgment is the same as that which applies to a motion for

4  summary judgment." *Sterling*, *supra*, 208 F. Supp. 3d at 1132.

5  **IV.   LEGAL ARGUMENT**

6         Generally, Section 7 of the FLSA requires employers to pay employees time and

7  one-half their regular rate of pay for all hours worked in excess of 40 in a regular

8  workweek unless a specific exemption from the payment of overtime applies.

9  *Riegelsberger*, 369 F.Supp.3d at 905; 29 U.S.C. § 207; *Thibodeaux v. Executive Jet*

10  *Intern., Inc.*, 328 F.3rd 742, 749-51. One such exemption is the "air carrier exemption"

11  in Section 13(b)(3), which provides that the overtime provisions of § 207 shall not apply

12  to "any employee of a carrier by air subject to the provisions of Title II of the Railway

13  Labor Act." 29 U.S.C. § 213(b)(3). While the term "carrier by air" is not defined under

14  the FLSA or RLA, courts apply a two-part test to determine whether § 213(b)(3) applies:

15  (1) whether the employer is a common carrier by air; and (2) whether the plaintiff's job

16  duties bear "more than a tenuous, negligible and remote relationship" to the employer's

17  transportation activities. *See id.; Northwest Airlines v. Jackson*, 185 F.2d 74, 77. Here,

18  both of these questions are easily answered in the affirmative, as the National Mediation

19  Board ("NMB"), and every federal court to consider the issue, has held that air ambulance

20  companies like AMC are common carriers by air under the RLA.  *See Riegelsberger*, 369

21  F.Supp.3d at 906.

22        **A.    *AMC is A "Common Carrier by Air"***

23            *1.    AMC's "Common Carrier" Status Relates to its Status as a "Part*

24                *135" Air Carrier*.

25         AMC's status as a "common carrier for hire" stems from the fact that it is, and at

26  all relevant time has been, certified pursuant to, and regulated by, Part 135 of the Federal

27  Aviation Regulations ("FAR"), 14 C.F.R. Part 135.  In contrast to Part 91 of the FAR,

28  which regulates private aircraft operators, Part 135 certificate holders, as common carriers

for hire rather than private aircraft operators, must comply with much more stringent safety standards. *See Woolsey*, 993 F.2d at 521-522. For example, the operator of a personal aircraft under Part 91 is bound by less restrictive flight-duty-time or rest requirements. 14 C.F.R. Part 91.  By contrast, an air charter company or other carrier operating under Part 135 has specific requirements for flight-duty-time and rest (Subpart F), its pilot qualifications standards are higher (Subpart E), and flight crew must be subjected to regular testing (Subpart G).  14 C.F.R. Part 135. The rationale for such regulation is apparent and entirely logical – companies transporting persons for hire must take additional steps to ensure the safety of their passengers, who are paying, lay customers who are not members of the aviation community.  *See Woolsey*, 993 F.2d at 522 ("the general public has a right to expect that airlines which solicit their business operate under the most searching tests of safety.") It is worth noting that Part 135, subpart L is devoted specifically to helicopter air ambulance equipment, operations, and training requirements. 14 C.F.R. Part 135, Subpart L – 135.601-621. Thus, indeed, the stringent safety requirements of Part 135 apply with equal, and indeed especial, force, in the context of an air ambulance provider such as AMC, where the person being transported (a critically ill patient) has no choice in the matter of whether to be transported – with the decision to retain one carrier or another being made by professional medical service providers such as hospitals and government emergency services agencies. *See Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 764 (4th Cir. 2018).

Where air transport service providers have attempted to argue that they are *not* regulated by Part 135, Courts have routinely rejected this argument where the carrier transports even small segments of the travelling public, such as wealthy persons and/or those in specific professions. *See Woolsey*, 993 F.2d at 525.  And, authorities have routinely and squarely held that air *ambulance* companies, who transport perhaps the most vulnerable type of passenger imaginable – a critical, possibly dying, and possibly unconscious emergency patients, who have little choice in the question of whether to be transported, are most definitely common carriers for hire.  *See e.g. Riegelsberger*, 369

F.Supp.3d 901; *Cheatham*, 910 F.3d 751. .

        2.      *As a Part 135 "Common Carrier", AMC Falls within the RLA Exemption*

While neither the RLA nor the FLSA defines the term "common carrier by air," the courts have used the common law definition to determine if an employer is a common carrier by air. *Thibodeaux,* 328 F.3d at 749.  Under this test, a common carrier by air is a company that "has held itself out" to the public "as being willing to transport for hire, indiscriminately." *Id.* (holding that company that managed fractionally owned and fractionally leased airplanes was a common carrier by air). *Id.* at 750. The test is satisfied even if the customer base is "a small segment of the general population." *Id.* at 750. The central question in determining whether a business is a common carrier by air is whether the company is "in the business of transporting persons or property for hire by air." *Id.* at 751 (quoting *Woolsey v. National Transp. Safety Bd.*, 993 F.2d 516, 524 (5th Cir. 1993)).

The *Thibodeaux* court emphasized that its test is an objective one, relying upon what the carrier actually does rather than the label which the carrier attaches to its activity or the purpose which motivates it.  *Id.* at 750.  It is immaterial, for example, that a company markets itself to hospitals and other emergency service providers rather than marketing to or taking transportation requests directly from the public.  *See Riegelsberger*, 369 F.Supp.3d at 907; *see also Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 764 (4th Cir. 2018) (holding that common carrier analysis does not turn on air ambulance companies' reliance on referrals from medical providers rather than responding to calls directly from the public.)

The fact that an air ambulance service may be required by government agencies or law to transport patients without regard to the patients' ability to pay does not minimize its common carrier status.  *See Riegelsberger*, F.Supp.3d at 907; *Med-Trans Corp. v. Benton*, F.Supp.2d, 721, 733; *Cheatham*, 910 F.3d at 764 ("Air ambulance companies…respond whenever called by emergency medical providers.  Patients need not be subscribers or have a preexisting contract to receive services.")

7

1    In *Slavens v. Scenic Aviation 221 F.3d 1353 at *1 (10th Cir. 2000)*, the former Vice

2    President of Medical Operations of an air ambulance company filed a lawsuit against the

3    company alleging he should have been paid for approximately 600 hours of overtime, and

4    that the company violated the FLSA by not paying him overtime. *Slavens*, 221 F.3d 1353

5    at *1 (10th Cir. 2000). The court noted that the defendant company attributed 90-95% of

6    its revenues to its air ambulance and charter service. *Id*. Additionally, the court found it

7    important that the company held an Air Carrier Certificate from the Federal Aviation

8    Administration ("FAA") authorizing it to "operate as an air carrier and conduct common

9    carriage operations." *Id*. Furthermore, the company existed for the sole purpose to provide

10   air carrier services. *Id*. Based on these facts, the court held there was no genuine issue of

11   material fact that the defendant air ambulance company was a common carrier by air

12   governed by the RLA, and was thus exempt from the overtime provisions of the FLSA.

13   *Id.*

14    Similarly, in *McKinley v. Med-Trans Corp*, a flight paramedic and a flight nurse

15   filed suit against Med-Trans, claiming they were entitled to recover unpaid overtime

16   wages pursuant to the FLSA. *McKinley v. Med-Trans Corp*, 2010 WL 11530302 at *1

17   (E.D. Tex. Aug. 4, 2010). The air ambulance provided its transportation services to

18   medical patients for a fee through hospitals and fire and police departments. *Id.* at *3. The

19   court found that through these acts, defendant indiscriminately marketed and provided its

20   services to a definable segment of the public. *Id.* at *3. The court concluded the air

21   ambulance was a common carrier by air and that all work directly related to the air

22   transportation business was exempt from FLSA overtime pay requirements. *Id. See also*

23   *Osborne v. Enchantment Aviation, Inc., 112 Fed. Appx. 673 (10th Cir. 2004)* (holding

24   that air ambulance service provider was an air carrier exempt from the FLSA's overtime

25   pay provisions.)

26    In addition to these three court decisions, the National Mediation Board ("NMB"),

27   which determines whether an entity is covered by the RLA, as well as the United States

28   Department of Labor Wage and Hour Division ("DOL"), which enforces the FLSA, have

8

1   concluded that Part 135 air ambulance companies that provide the same services in the
2   same manner to the same customers as Defendants are common carriers by air.  In *In re*
3   *TriState CareFlight, LLC,* the NMB responded to a request for an opinion regarding
4   whether an air ambulance service was subject to the RLA. *In re TriState CareFlight, LLC*,
5   41 N.M.B. 55 (Apr. 14, 2014). The air ambulance company in question operated multiple
6   bases across five states. *Id.* at 59. The company held a Part 135 Certificate from the FAA
7   to conduct air carrier operations. *Id.* The air ambulance held its services out to the public
8   and provided scheduled and unscheduled flights through contracts with health care
9   facilities and EMS agencies as well as requests from individuals. *Id.* Based on these facts,
10  the NMB found the air ambulance service was a common carrier by air holding itself out
11  to the public for hire with employees subject to the RLA. *Id.* at 61. *See also In re Rocky*
12  *Mountain Holdings, LLC d/b/a Eagle Airmed of Ariz.,* 26 N.M.B. 132 (Jan. 12, 1999),
13  (reaching the same conclusion involving an air ambulance company that did not solicit,
14  receive, or act on calls originating directly from individuals, but only provided services in
15  response to calls from authorized agencies). Citing *Slavens* and *In re Rocky Mountain*
16  *Holdings*, the DOL issued an opinion stating an air ambulance company operating in
17  multiple states and holding a Part 135 Certificate was exempt from the FLSA's overtime
18  provisions. D.O.L. Opinion Letter FLSA2005- 10NA (Sept. 16, 2005).

19      *Slavens*, *Osborne*, and *McKinley* are directly on point.  Here, Defendant operates
20  under the same Air Carrier Certificate issued by the FAA as the defendants did in *Slavens*.
21  (Exhibit 1, at ¶ 5 and Exhibit A thereto). Defendant's Part 135 Certificate issued by the
22  Federal Aviation Administration authorizes AMC "to operate as an air carrier and conduct
23  common carriage operations." (Exhibit 1, at ¶ 6). The sole purpose for Defendant's
24  existence is to provide air ambulance services, and 100% of AMC's revenues are
25  attributable to their air ambulance services. (Exhibit 1, at ¶ 4). AMC charges a fee to the
26  patients it transports, but provides air ambulance services indiscriminately, without
27  regard to a patient's insured status. (Exhibit 1, at ¶¶s 7, 8).
28  ///

9

It is clear that, throughout the relevant time period, AMC has held itself out to its target market, namely hospitals, dispatchers, EMS agencies, and individuals as being willing to transport for hire. Anyone can hire an AMC air ambulance for transportation of a critically ill or injured patient. AMC is willing to transport any individuals, indiscriminately.  No determination is, or has been, made regarding the demographic category any individual fits within.  Therefore, AMC is, and at all relevant times has been, a common carrier by air to which the overtime exemption applies. AMC's Motion for Partial Summary Judgment should be granted accordingly.

**B.**     ***Plaintiffs' Job Duties Bear "More Than A Tenuous, Negligible And Remote Relationship" To AMC's Transportation Activities.***

In their Complaint, Plaintiffs do not seem to take issue with the fact that flight paramedics and flight nurses are "flight crew members," and that their job duties "bear more than a tenuous, negligible, and remote relationship to the transportation activities of the employer." Indeed, the court in *Osborne* and DOL in Opinion Letter FLSA2005-10NA specifically concluded that a flight paramedic who performed the same basic job duties as Plaintiffs here performed exempt work. Even the court in *McKinley* concluded that the duties performed by the plaintiff outside of when he was loaned specific hospital were exempt duties. In *Slavens*, the court went so far as to hold that the Vice President of Medical Operations, who was responsible for evaluating the medical background of potential medical staff, establishing medical protocols, and informing hospitals of the company's services, performed exempt work. *Slavens*, 221 F.3d 1353 at *2.

Here, AMC's flight paramedics and flight nurses have a variety of job duties including, but not limited to, providing medical care to patients in the air, assisting the pilot with radio, navigational, and visual observation activities, complying with aircraft safety standards, and completing and submitting flight records. ((Exhibit 2, at ¶¶s 2 and 3, Exhibit A, p. 10:22-11:5, 14:1-7, 14:13-22, 15:2-7, and 15:22-25, and Exhibits B, C, D, and E thereto). AMC, who derives the majority of its revenues from air ambulance services, would certainly not be able to provide such services without its flight nurses and

flight paramedics, who are crucial members of their flight crews. (Exhibit 1, at ¶¶s 10-11). Therefore, the flight paramedics' and flight nurses' job duties bear far more than a tenuous, negligible, and remote relationship to AMC's transportation activities, and AMC's employees, including Plaintiffs, are subject to the RLA and exempt from FLSA overtime provisions. Accordingly, this Court should grant AMC's Motion for Partial Summary Judgment.

C. *AMC is Not Estopped From Asserting the Common Carrier by Air Exemption*

As laid out, *supra*, AMC is exempt from paying overtime, because it is a "common carrier by air" pursuant to the RLA Exemption.  It is well-settled that claims of estoppel may not produce a result contrary to public policy.  *See Daly v. Volpe*, 376 F.Supp. 987, 992 (W.D. Wash. 1974) ("the doctrine of estoppel cannot be the means of successfully avoiding requirements of legislation enacted for the protection of the public interest.") The legislation at issue here, RLA Exemption, is in place to protect common carriers and their customers, members of the public.  Since AMC is exempt by statute from paying overtime, Plaintiff's alternative claim for equitable estoppel/promissory estoppel fail as a matter of law.

Here, public policy is clear – as an air ambulance provider, AMC is a Part 135 common carrier for hire, and such carriers are exempt from the FLSA's overtime provisions. *See Riegelsberger*; *Rocky Mountain Holdings, LLC*; *Cheatham, supra*. Plaintiffs' claims that AMC should be estopped from asserting the RLA exemption due to statements made by its management personnel and/or in employee handbooks and the like (Amended Complaint, at ¶143) have been squarely rejected. *See Riegelsberger*, 369 F.Supp.3d, at 908.

/ / /

/ / /

/ / /

/ / /

11

1

## V.    CONCLUSION

2      The law is clear. The undisputed material facts clearly establish as a matter of law

3  that AMC is exempt from the overtime provisions of the FLSA, and AMC's employees,

4  including Plaintiffs, are not entitled to overtime compensation. Moreover, Plaintiffs'

5  alternative claim for equitable/promissory estoppel is barred because it would result in a

6  contravention of public policy.  Accordingly, AMC respectfully requests this Court grant

7  its Motion for Partial Summary Judgment, enter judgment in its favor on Counts 1 and 3,

8  and Count 2, to the extent it seeks overtime premiums on off-the-clock work, award AMC

9  its costs and attorneys' fees, and such other relief as the Court deems just and proper.

10

11

12

13                                FISHER & PHILLIPS LLP

14

15

16                         By: /s/ Christopher M. Ahearn
                              Lonnie D. Giamela
17                            Sean T. Kingston
                              Christopher M. Ahearn
18
                              Attorneys for Defendant
19                            Air Methods Corporation

20

21

22

23

24

25

26

27

28

12

1

## TABLE OF EXHIBITS

2

3    Exhibit 1      Declaration of Christopher M. Ahearn In Support of Defendant's Motion

4                   for Partial Summary Judgment

5    Exhibit 2      Declaration of Valentina Giangrasso In Support of Defendant's Motion

6                   for Partial Summary Judgment

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Kenneth Cooley, et al. v. Air Metholds Corporation, et al.*,
United States District Court, District of Arizona

**DEFENDANT AIR METHODS CORPORATION'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**EXHIBIT 1 (Declaration of Valentina Giangrasso In Support of
Defendant's Motion for Partial Summary Judgment)**

**DECLARATION OF VALENTINA GIANGRASSO**

I, Valentina Giangrasso, declare and state as follows:

1.  I am the Senior Vice President of Clinical Operations for Defendant Air Methods Corporation ("AMC"). In such capacity, I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2.  AMC is, and has been since at least February 8, 2016, an air ambulance company providing air medical transport services to critically ill or injured patients, often in medically underserved rural areas.

3.  AMC operates, and has since at least February 8, 2016, operated over 100 air medical bases across 48 states and has transported patients within those states and across state lines.

4.  During the time period from at least February 8, 2016 to the present, with the limited exception of small subsidiaries who have operated air charter helicopter tours (which have not, at any time, employed nurses or paramedics of any kind), AMC's sole business purpose has been, and continues to be, to provide services in the form of an air ambulance, deriving 100% of its revenue from air ambulance services.

5.  During the time period from at least February 8, 2016 to the present, in order to operate as an air carrier, AMC has maintained, and continues to maintain, a Part 135 Certification issued by the Federal Aviation Administration, and AMC has held this certificate continuously since 1992. A true and correct copy of the Certificate is attached hereto as Exhibit "A" and was also produced with Defendants' initial disclosures as AMC000001.

6.  Under the certificate referenced in paragraph 5 above, AMC has been and remains "authorized to operate as an air carrier and conduct common carriage operations in accordance with [the FAA.]".

7.  During the time period from at least February 8, 2016 to the present, AMC has charged a fee for the services it has provided to the patients it transports, and

2

FP 37264092.2

1    AMC continues to charge such fees.

2        8.    During the time period from February 8, 2016 to the present, AMC has

3    provided its services indiscriminately, without regard to a critically ill or injured

4    patient's insured status, or any demographic attribute; and, AMC continues to do so.

5        9.    During the time period from at least February 8, 2016 to the present, an

6    AMC medical flight crew has consisted of, and continues to consist of, one flight

7    paramedic and one flight nurse (though in some cases, crews have consisted of 2

8    nurses).

9        10.   During the time period from at least February 8, 2016 to the present, the

10   job duties performed by medical flight crew, including Plaintiffs, have been, and

11   remain, critical and integral to AMC's air ambulance services and to the safe flight

12   operations of AMC's air ambulances.

13       11.   During the time period from at least February 8, 2016 to the present,

14   medical flight crew have been, and remain, crucial to Defendant's operations, as

15   without a medical flight crew, AMC would not be able to operate an air ambulance

16   service.

17       12.   During the time period from February 8, 2016 to the present, it has been

18   AMC's policy and practice (which has been regularly and faithfully implemented),

19   pursuant to agreements with the government agencies and hospitals that have retained

20   AMC's services, to serve any patient in need, regardless of his or her ability to pay.

21       I declare under penalty of perjury under the laws of the United States of America

22   that the foregoing is true and correct.

23       Executed on March 5, 2020, at Greenwood Village, Colorado.

24

25   Valentina Giangrasso

26

27

28

3

DECLARATION OF VALENTINA GIANGRASSO IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

FP 37264092.2

# EXHIBIT A



**GENERAL OPERATIONS MANUAL**

Rev 9: 5/14/15

## 11.14 Air Methods Carrier Certificate



US Department
of Transportation
Federal Aviation
Administration

# Air Carrier Certificate

## This certifies that

**Air Methods Corporation**
**7301 South Peoria Street**
**Englewood, Colorado 80112**

has met the requirements of the Federal Aviation Act of 1958, as amended, and the rules, regulations, and standards prescribed thereunder for the issuance of this certificate and is hereby authorized to operate as an air carrier and conduct common carriage operations in accordance with said Act and the rules, regulations, and standards prescribed thereunder and the terms, conditions, and limitations contained in the approved operations specifications.

This certificate is not transferable and, unless sooner surrendered, suspended, or revoked, shall continue in effect indefinitely.

By Direction of the Administrator

Certificate number: ____QMLA253U____

Effective Date: ____March 1, 1992____

Issued at: _____NM03_____

John Lusk
*(Signature)*

FSDO Manager
*(Title)*

__Northwest Mountain Region FSDO 03__
*(Region/Office)*

FAA Form 8430-18 (8-87)          AFS Electronic Forms System • v2.2

Uncontrolled copy when downloaded or printed.
Refer to the Corporate Publications site for the most current version of this document.
Trade Secret and/or Confidential Commercial Information IAW 49 U.S.C. § 1114 and C.F.R. § 831.6

AMC000001

*Kenneth Cooley, et al. v. Air Methods Corporation, et al.*,
United States District Court, District of Arizona

**DEFENDANT AIR METHODS CORPORATION'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**EXHIBIT 2 (Declaration of Christopher M. Ahearn In Support of
Defendant's Motion for Partial Summary Judgment)**

## <u>DECLARATION OF CHRISTOPHER M. AHEARN</u>

I, Christopher M. Ahearn, declare and state as follows:

1.      I am an attorney at law duly licensed to practice before all courts in the State of California and admitted *pro hac vice* in United States District Court, District of Arizona. I am a partner with Fisher Phillips LLP and counsel for Air Methods Corporation ("AMC").  I assert the facts set forth herein based on my personal knowledge. If called as a witness, I could and would completely testify thereto.

2.      On November 12, 2019, I attended the deposition of AMC's Person Most Knowledgeable, Claire Capacci.  Attached hereto as Exhibits "A," "B," "C," "D," and "E" are excerpts from and exhibits to the transcript of the deposition of Claire Capacci, taken in the above-captioned action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 6, 2020, at Irvine, California.

　　　　　　　　　 _/s/ Christopher M. Ahearn_
　　　　　　　　　 Christopher M. Ahearn

FP 37188933.2

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
Civil Action Case No.:2:19-CV-00850


KENNETH COOLEY, JEREMY
LEMASTER, ROBERT NEEDHAM, and
JAMIE COLLINS, on behalf of
themselves and all others
similarly situated,

     Plaintiffs,

     vs.

AIR METHODS CORPORATION, a
Delaware Corporation,

     Defendant.


       30(b)(6) Oral Deposition of AIR METHODS
CORPORATION by and through CLAIRE CAPACCI, taken
on behalf of Plaintiffs at Fisher & Phillips,
located at 1801 California Street, Suite 2700, Denver,
Colorado 80202,on November 12, 2019, at 9:06 a.m.,
before Marjorie R. Dauster, Registered Merit Reporter,
Certified Realtime Reporter, and Notary Public within
Colorado.

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 ▪ www.advanceddepositions.com

Oral Deposition of Claire Capacci 30(b)(6), 11/12/2019

2

1                          APPEARANCES

2

3    For the Plaintiffs:
     PHILIP OLIPHANT, ESQUIRE
4    The Crone Law Firm, PLC
     88 Union Avenue, 14th Floor
5    Memphis, Tennessee 38103
     901.737.7740
6    poliphant@cronelawfirmplc.com

7

8    For the Defendant:
     CHRISTOPHER M. AHEARN, ESQUIRE
9    Fisher & Phillips LLP
     2050 Main Street, Suite 1000
10   Irvine, California 92614
     949.851.2424
11   cahearn@fisherphillips.com

12

13   Also present:
                 Christopher Brady
14               Associate General Counsel

15

16

17

18

19

20

21

22

23

24

25

Oral Deposition of Claire Capacci 30(b)(6), 11/12/2019

5

1           PROCEEDINGS
2           CLAIRE CAPACCI,
3  having been first duly sworn, was examined and
4  testified as follows:
5           (Deponent's response to oath:  I do.)
6
7           EXAMINATION
8  BY MR. OLIPHANT:
9     Q.    Ms. Capacci, my name is Phil Oliphant.  I
10  represent the plaintiffs in this case.
11          And let's begin by getting your name on the
12  record -- your full name.
13     A.    Claire Capacci.
14     Q.    And you understand that you're here today to
15  testify on behalf of the defendant, Air Methods, in
16  this case; is that correct?
17     A.    It is correct.
18     Q.    All right.  Have you ever been involved in a
19  deposition before?
20     A.    No, I have not.
21     Q.    Okay.  Well, welcome to the world of
22  depositions.  So just a little bit about what a
23  deposition is conceptually.
24          Some people like to call a deposition a court
25  proceeding without the Court, by which is meant that

advanced
depositions
Nationwide Court Reporting & Trial Support
855-204-8184 • www.advanceddepositions.com

Oral Deposition of Claire Capacci 30(b)(6), 11/12/2019

10

1    A.    I am not.

2    Q.    Okay.  Do you know if the company actually has

3    those roles presently?

4    A.    I am not aware of any official titles of

5    "master."

6    Q.    Okay.  All right.  So what do these titles or

7    roles have in common as a group in Air Methods'

8    business?

9          MR. AHEARN:  Objection.  Vague.  Compound.

10   Q.    (By Mr. Oliphant)  In other words -- well, let

11   me be much more specific.

12         Are these roles and these jobs all part of the

13   medical flight crew in the services that Air Methods

14   provides?

15   A.    Those are positions that we hire to staff our

16   bases.

17   Q.    And am I correct in that terminology, that

18   these are all part of the medical flight crew?

19   A.    Correct.

20   Q.    Okay.

21   A.    We fly typically nurse medic.

22   Q.    Okay.  I'm passing you a document that was

23   provided to us by Air Methods.  And it is a job

24   description.  Can you tell me what position this is a

25   description of?

Oral Deposition of Claire Capacci 30(b)(6), 11/12/2019

11

1          MR. AHEARN:  Let the record reflect we're
2    looking at Bates Number 132.
3          MR. OLIPHANT:  Thank you.
4      A.    This is the job description for a flight
5    paramedic.
6      Q.    (By Mr. Oliphant)  Okay.  And do you see the
7    area at the top where it says "FLA Status"?  It's the
8    third line down, I believe.
9      A.    Yes, sir.
10     Q.    Okay.  And what status is indicated there?
11     A.    The paper says "non-exempt."
12     Q.    Okay.  And from your expertise as an HR VP,
13   could you explain what that non-exempt status means.
14         MR. AHEARN:  Calls for a legal opinion.
15         If you can answer based on your own knowledge
16   outside legal counsel's advice, you may do so.
17     A.    I am familiar with what "non-exempt" means for
18   our internal staff.
19     Q.    (By Mr. Oliphant)  Okay.  And what is that?
20     A.    We do not classify our flight crew with an
21   FLSA status.  This is just a standard format that we
22   use for our job descriptions.
23     Q.    You totally lost me.
24         So this is a form that Air Methods has put
25   together and published; is that correct?

14

1    MR. OLIPHANT:  Okay.  Could we mark that as

2 Exhibit 2, please.

3    (Exhibit Number 2 was marked.)

4    Q.    (By Mr. Oliphant)  I'm handing you another job

5 description Bates-stamped 128.  And what is that a job

6 description for?

7    A.    This one is a flight paramedic float.

8    Q.    And, again, is an FLSA status indicated on the

9 form?

10    A.    It is.

11    Q.    And what is that status?

12    A.    The form states "non-exempt."

13    MR. OLIPHANT:  Okay.  And we'll label that

14 Exhibit 3.

15    (Exhibit Number 3 was marked.)

16    Q.    (By Mr. Oliphant)  And I'm passing you a third

17 job description.

18    MR. AHEARN:  Bates 124.

19    MR. OLIPHANT:  Thank you.

20    Q.    (By Mr. Oliphant)  And what title is that a

21 job description for?

22    A.    This is a flight nurse.

23    Q.    Okay.  And, again, FLSA status is indicated.

24 And what is that?

25    A.    The format of the form reads "non-exempt."

Oral Deposition of Claire Capacci 30(b)(6), 11/12/2019

15

1    Q.     Thank you.

2           MR. OLIPHANT:   Exhibit 4.

3           (Exhibit Number 4 was marked.)

4    Q.     (By Mr. Oliphant)  And Bates stamp 120,

5    another job description.  What job title is that a

6    description for?

7    A.     Flight nurse float.

8    Q.     Okay.  And what FLSA status is indicated

9    there?

10   A.     The format on the form states "non-exempt."

11   Q.     Okay.  So it would appear that the official

12   job descriptions for the positions that we listed at

13   the beginning of this deposition all indicate "FLSA

14   Status: Non-exempt"; is that correct?

15   A.     The paper I was just reading states

16   "non-exempt."

17   Q.     Okay.  And that paper is put out by Air

18   Methods; is that correct?

19   A.     It is.

20          THE REPORTER:  Did you want me to mark that,

21   Counsel?

22          MR. OLIPHANT:  Yes.  I'm sorry.

23          (Exhibit Number 5 was marked.)

24          MR. AHEARN:  Let the record reflect that was

25   marked as Exhibit 5.

Oral Deposition of Claire Capacci 30(b)(6), 11/12/2019

63

1                          CERTIFICATE

2             I, MARJORIE R. DAUSTER, Registered Merit

3    Reporter and Certified Realtime Reporter, certify that

4    the above proceedings were had, then reduced to

5    typewritten form by means of computer-aided

6    transcription.

7             I further certify that I am not related to

8    any party herein or their counsel and have no interest

9    in the result of this matter.

10            IN WITNESS WHEREOF, I have hereunto set my

11   hand and seal this 18th day of November, 2019.

12

13

14

15

16             Marjorie R. Dauster

17             Marjorie R. Dauster
               Registered Merit Reporter
18             Certified Realtime Reporter

19

     My Commission Expires:
20   January 16, 2023

21                              MARJORIE R DAUSTER
                                NOTARY PUBLIC
22                              STATE OF COLORADO
                                NOTARY ID 20074001935
23                              MY COMMISSION EXPIRES JANUARY 16, 2023

24

25

# EXHIBIT B



| Job Title: | Flight Paramedic | Reports To: | Regional Clinical Manager |
|---|---|---|---|
| Job Family: | Clinical | Job Code: | Varies by level |
| FLSA Status: | Non-exempt | Last Modified Date: | February 28, 2017 |

## Job Description

**Job Summary**

Responsible for providing high quality pre-hospital advanced life support including assessment, triage, and treatment utilizing standards and guidelines established by Air Methods Community Based Services (CBS) Medical Director(s). You'll be responsible for carrying out the mission and goals of Air Methods CBS assuring that safety remains the highest priority throughout the transport continuum.

| Essential Functions and Responsibilities include the following: | % of Time |
|---|---|
| • Provides pre-hospital advanced life support care from the initial contact until patient care is relinquished to the accepting medical facility; maintains thorough patient care documentation. | 25% |
| • Practices within his/her scope of practice as defined by the states regulating each base and Air Methods CBS. Maintains competency in knowledge and psychomotor skills by participating in ongoing laboratory and clinical experiences. Communicates educational needs to the Medical Base Supervisor and Medical Education Coordinator. | 10% |
| • Maintains documentation of required licensure, certifications, continuing education, aviation and safety training, OSHA and HIPAA training, clinical rotations, and advanced procedures.  Attends minimum of six educational programs per year pertinent to his/her practice. | 5% |
| • Knowledgeable in use and routine maintenance of all equipment and supplies used by Air Methods CBS. Responsible for reporting medical equipment failures and taking initial steps to insure repair of equipment as directed. Maintains adequate supplies onboard aircraft to deliver patient care. Keeps aircraft clean and orderly to insure rapid response to all transport requests. | 15% |
| • Participates in patient and referring institution follow-up and planned outreach marketing and education activities. | 10% |
| • Functions as a medical flight member by attending pre-mission briefings and mission debriefings and completes necessary documentation. Assists in pre-mission liftoff checklist and assists pilot as requested, i.e., radio, navigational, and visual observation activities. Complies with safety standards to assure safety of self, medical personnel, patient, and equipment. Conducts aircraft safety briefings as needed. | 10% |
| • Serves as a flight resource to neonatal/pediatric personnel when transporting specialty patients by helicopter. Performs advanced skills and procedures as approved by Air Methods CBS Medical Director(s). | 10% |
| • Serves as a role model, educator and clinical resource. Participates regularly in departmental activities, projects and committees (to include research and publishing opportunities). Maintains awareness of current issues related to pre-hospital care through participation in professional activities, i.e., national, state legislative--elected or appointed. | 10% |
| • Other Duties as assigned. | 5% |
| **Additional Job Requirements** | |
| • Regular scheduled attendance | |
| • Indicate the percentage of time spent traveling | 5% |

Subject to applicable laws and Air Method's policies, regular attendance is an essential function of the position.  All employees must follow Air Methods' employment practices and policies.

**Supervisory Responsibilities**

This position has no supervisory responsibilities.

**Qualifications**

EXHIBIT
2
Capacci
PENGAD 800-631-6989    11-12-19

# EXHIBIT C



| Job Title: | Flight Paramedic Float | Reports To: | Area Manager |
|---|---|---|---|
| Job Family: | Clinical | Job Code: | Varies by level |
| FLSA Status: | Non-exempt | Last Modified Date: | February 28, 2017 |

## Job Description

### Job Summary

Responsible for providing high quality pre-hospital advanced life support including assessment, triage, and treatment utilizing standards and guidelines established by Air Methods Community Based Services (CBS) Medical Director(s). You'll be responsible for carrying out the mission and goals of Air Methods CBS assuring that safety remains the highest priority throughout the transport continuum. This position supports multiple Clinical Flight Teams in an assigned area.

| Essential Functions and Responsibilities include the following: | % of Time |
|---|---|
| • Provides pre-hospital advanced life support care from the initial contact until patient care is relinquished to the accepting medical facility; maintains thorough patient care documentation. | 25% |
| • Practices within his/her scope of practice as defined by the states regulating each base and Air Methods CBS. Maintains competency in knowledge and psychomotor skills by participating in ongoing laboratory and clinical experiences. Communicates educational needs to the Medical Base Supervisor and Medical Education Coordinator. | 15% |
| • Maintains documentation of required licensure, certifications, continuing education, aviation and safety training, OSHA and HIPAA training, clinical rotations, and advanced procedures. Attends minimum of six educational programs per year pertinent to his/her practice. | 5% |
| • Knowledgeable in use and routine maintenance of all equipment and supplies used by Air Methods CBS. Responsible for reporting medical equipment failures and taking initial steps to insure repair of equipment as directed. Maintains adequate supplies onboard aircraft to deliver patient care. Keeps aircraft clean and orderly to insure rapid response to all transport requests. | 15% |
| • Participates in patient and referring institution follow-up and planned outreach marketing and education activities. | 10% |
| • Functions as a medical flight member by attending pre-mission briefings and mission debriefings and completes necessary documentation. Assists in pre-mission liftoff checklist and assists pilot as requested, i.e., radio, navigational, and visual observation activities. Complies with safety standards to assure safety of self, medical personnel, patient, and equipment. Conducts aircraft safety briefings as needed. | 10% |
| • Serves as a flight resource to neonatal/pediatric personnel when transporting specialty patients by helicopter. Performs advanced skills and procedures as approved by Air Methods CBS Medical Director(s). | 5% |
| • Serves as a role model, educator and clinical resource. Participates regularly in departmental activities, projects and committees (to include research and publishing opportunities). Maintains awareness of current issues related to pre-hospital care through participation in professional activities, i.e., national, state legislative--elected or appointed. | 10% |
| • Other Duties as assigned. | 5% |
| **Additional Job Requirements** | |
| • Regular scheduled attendance | |
| • Indicate the percentage of time spent traveling | 85% |

Subject to applicable laws and Air Method's policies, regular attendance is an essential function of the position. All employees must follow Air Methods' employment practices and policies.

### Supervisory Responsibilities

This position has no supervisory responsibilities.

### Qualifications

EXHIBIT
3
Capacci  11-12-19
PENGAD 800-631-6989

AMC000128

# EXHIBIT D



| Job Title: | Flight Nurse | Reports To: | Regional Clinical Manager |
|---|---|---|---|
| Job Family: | Clinical | Job Code: | Varies by level |
| FLSA Status: | Non-Exempt | Last Modified Date: | February 28, 2017 |

## Job Description

**Job Summary**

Responsible for providing high quality critical care including assessment, triage, and treatment utilizing standards and guidelines established by Air Methods Community Base Services (CBS) Medical Director(s). You'll assess the nature and extent of illness or injury to establish and prioritize the care needed for safe transport of the critical patient to the appropriate facility and are responsible for carrying out the mission and goals of Air Methods CBS assuring that safety remains the highest priority throughout the transport continuum.

| Essential Functions and Responsibilities include the following: | % of Time |
|---|---|
| • Provides nursing care within his/her scope of practice from the initial contact until patient care is relinquished to the accepting medical facility; maintains thorough patient care documentation. | 25% |
| • Maintains competency in knowledge and psychomotor skills by participating in ongoing laboratory and clinical experiences. Communicates educational needs to the Medical Base Supervisor and Medical Education Coordinator. Maintains documentation of required licensure, certifications, continuing education, aviation and safety training, OSHA and HIPAA training, clinical rotations, and advanced procedures and attends continuing education programs pertinent to his/her area of practice. | 15% |
| • Knowledgeable in use and routine maintenance of all equipment and supplies used by Air Methods CBS. Responsible for reporting medical equipment failures and taking initial steps to insure repair of equipment as directed. Maintains adequate supplies onboard aircraft to deliver patient care. Keeps aircraft clean and orderly to insure rapid response to all transport requests. | 15% |
| • Functions as a medical flight member by attending pre-mission briefings and mission debriefings and completing necessary documentation. Assists in pre-mission liftoff checklist and assists pilot as requested, i.e., radio, navigational, and visual observation activities. Complies with safety standards to assure safety of self, medical personnel, patient, and equipment and conducts aircraft safety briefings as needed. | 10% |
| • Serves as a flight resource to neonatal/pediatric personnel when transporting specialty patients by helicopter and performs advanced skills and procedures as approved by Air Methods CBS Medical Director(s). | 10% |
| • Participates in patient and referring institution follow-up and in planned outreach marketing and education activities | 5% |
| • Acts as a preceptor and/or participates in orientation of new employees and students as assigned and communicates program goals and objectives. | 5% |
| • Participates regularly in Air Methods CBS meetings, activities, projects and committees (to include research and publishing opportunities). | 10% |
| • Other Duties as assigned. | 5% |
| **Additional Job Requirements** | |
| • Regular scheduled attendance | |
| • Indicate the percentage of time spent traveling | 5% |

Subject to applicable laws and Air Method's policies, regular attendance is an essential function of the position. All employees must follow Air Methods' employment practices and policies.

**Supervisory Responsibilities**

This position has no supervisory responsibilities.

EXHIBIT
4
Capacci   1-12-19

# EXHIBIT E



| Job Title: | Flight Nurse Float | Reports To: | Area Manager |
|---|---|---|---|
| Job Family: | Clinical | Job Code: | Varies by level |
| FLSA Status: | Non-Exempt | Last Modified Date: | February 28, 2017 |

## Job Description

**Job Summary**

Responsible for providing high quality care including assessment, triage, and treatment utilizing standards and guidelines established by Air Methods Community Base Services (CBS) Medical Director(s). You'll assess the nature and extent of illness or injury to establish and prioritize the care needed for safe transport of the critical patient to the appropriate facility and are responsible for carrying out the mission and goals of Air Methods CBS assuring that safety remains the highest priority throughout the transport continuum. This position supports multiple Clinical Flight Teams in an assigned area.

| Essential Functions and Responsibilities include the following: | % of Time |
|---|---|
| • Provides nursing care within his/her scope of practice from the initial contact until patient care is relinquished to the accepting medical facility; maintains thorough patient care documentation. | 25% |
| • Maintains competency in knowledge and psychomotor skills by participating in ongoing laboratory and clinical experiences. Communicates educational needs to the Medical Base Supervisor and Medical Education Coordinator. Maintains documentation of required licensure, certifications, continuing education, aviation and safety training, OSHA and HIPAA training, clinical rotations, and advanced procedures and attends continuing education programs pertinent to his/her area of practice. | 15% |
| • Knowledgeable in use and routine maintenance of all equipment and supplies used by Air Methods CBS. Responsible for reporting medical equipment failures and taking initial steps to insure repair of equipment as directed. Maintains adequate supplies onboard aircraft to deliver patient care. Keeps aircraft clean and orderly to insure rapid response to all transport requests. | 15% |
| • Functions as a medical flight member by attending pre-mission briefings and mission debriefings and completing necessary documentation. Assists in pre-mission liftoff checklist and assists pilot as requested, i.e., radio, navigational, and visual observation activities. Complies with safety standards to assure safety of self, medical personnel, patient, and equipment and conducts aircraft safety briefings as needed. | 10% |
| • Serves as a flight resource to neonatal/pediatric personnel when transporting specialty patients by helicopter and performs advanced skills and procedures as approved by Air Methods CBS Medical Director(s). | 10% |
| • Participates in patient and referring institution follow-up and in planned outreach marketing and education activities. | 5% |
| • Acts as a preceptor and/or participates in orientation of new employees and students as assigned and communicates program goals and objectives. | 5% |
| • Participates regularly in Air Methods CBS meetings, activities, projects and committees (to include research and publishing opportunities). | 10% |
| • Other Duties as assigned. | 5% |
| **Additional Job Requirements** | |
| • Regular scheduled attendance | |
| • Indicate the percentage of time spent traveling | 85% |

Subject to applicable laws and Air Method's policies, regular attendance is an essential function of the position. All employees must follow Air Methods' employment practices and policies.

**Supervisory Responsibilities**

 Air Methods Corp Confidential/Proprietary



1

## CERTIFICATE OF SERVICE

2

    I hereby certify that on March 6, 2020 I electronically transmitted the foregoing

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrant(s):

5

6

Michael J Lingle    mlingle@theemploymentattorneys.com

7

Laura Ann E Bailey lbailey@cronelawfirmplc.com

8

Philip Oliphant      poliphant@cronelawfirmplc.com

9

Alan G Crone       acrone@cronelawfirmplc.com

10

11

                       */s/ Christopher M. Ahearn*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28