Lonnie D. Giamela (SBN 228435)
Admitted Pro Hac Vice
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501
lgiamela@fisherphillips.com

Christopher M. Ahearn (SBN 239089)
Sean T. Kingston (SBN 276099)
Admitted Pro Hac Vice
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, CA 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152
cahearn@fisherphillips.com
skingston@fisherphillips.com

Attorneys for Defendant
Air Methods Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Cooley, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>Air Methods Corporation, a Delaware corporation,<br><br>　　　　　　　Defendant. | Civil Action No: 2:19-CV-00850-PHX-DLR<br><br>**DEFENDANT AIR METHODS CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

FP 37756989.1

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................4

II.  PLAINTIFFS' EVIDENCE SUBMITTED IN SUPPORT OF THEIR OPPOSITION IS INSUFFICIENT TO MEET THEIR BURDEN IN OPPOSITION TO THE MOTION ........................................................................5

III. AMC IS A "COMMON CARRIER BY AIR" ........................................................6

V.   OBJECTIONS TO PLAINTIFFS' EVIDENCE ................................................. 12

VI.  CONCLUSION ................................................................................................ 14

**TABLE OF CONTENTS**

**Cases**

Bell v. Foster Poultry Farms, 2007 WL 896119 at *4 (E.D. Cal. March 22, 2007) -10, 11

Busgith v. Hudson News Co., 2008 WL 1771788 at *8 (Sup. Ct. N.Y. Apr. 8, 2008) ---------- 10

In re Rocky Mountain Holdings, LLC d/b/a Eagle Airmed of Ariz., 26 N.M.B. 132 (Jan. 12, 1999) ----------4

In re TriState CareFlight, LLC, 41 N.M.B. 55 (Apr. 14, 2014) ----------4

McKinley v. Med-Trans Corp., 2010 WL 11530302, at *3 (E.D. Tex. 2010) ----------4

**Statutes**

45 U.S.C. § 152 ----------9

**Other Authorities**

D.O.L. Opinion Letter FLSA2005-10NA (Sept. 16, 2005) ----------4

**Federal Cases**

Air Evac EMS, Inc. v. Cheatham, 910 F.3d 751, 764 (4th Cir. 2018)----------6, 8, 9

Bhd. of R.R. Trainmen v. Chicago River & Ind. R.R. Co., 353 U.S. 30, 40 (1957) ----------9

California State Board of Equalization v. Coast Radio Products, 228 F.2d 520, 525 (9th Cir.1955) ----------10, 11

Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1329 (8th Cir. 1995) ---------- 11

Estate of Carberry v. Commissioner of Internal Revenue, 933 F.2d 1124, 1127 (2d Cir.1991)---------- 11

Heckler v. Cmty. Health Servs, 467 U.S. 51, 59 (1984) ---------- 10

Kautsch v. Premier Communs., 205 F. Supp. 2d, 1007, 1015 (W.D. Mo. 2007) ----10, 11

Med-Trans Corp. v. Benton, F.Supp.2d, 721 ----------8

Molina v. First Line Soluations LLC, 566 F. Supp. 2d770, 779-780 (N.D. Ill. 2007) ---------- 10

O'Donnell v. Vencor, Inc., 465 F.3d 1063, 1067 (9th Cir. 2006)---------- 11

Osborne v. Enchantment Aviation, Inc., 112 Fed. Appx. 673 (10th Cir. 2004)----------4

Pan Am. World Airways, Inc. v. United Bhd. Of Carpenters & Joiners of Am., 324 F.2d 217, 220 (9th Cir.1963)----------9

Redman v. U.S. West Business Resources, Inc., 153 F.3d 691, 695-696 (8th Cir. 1998) .......... 11

Riegelsberger v. Air Evac EMS, Inc., 369 F.Supp.3d 901, 906 (E.D. Mo. 2019) - 4, 6, 11

Slavens v. Scenic Aviation, Inc., 221 F.3d 1353 (10th Cir. 2000) .......... 4, 8

Thibodeaux v. Exec. Jet Int'l, Inc. 328 F.3d 742, 754 (5th Cir. 2003) .......... 9

**Federal Rules**

Federal Rules of Evidence §§404-405 .......... 12, 13

Federal Rules of Evidence §§701, 702 .......... 13

Federal Rules of Evidence §1002 .......... 13

Federal Rules of Evidence §402 .......... 12, 13

Federal Rules of Evidence §602 .......... 12, 13

Federal Rules of Evidence §802 .......... 12, 13

Federal Rules of Evidence §901 .......... 13

## I. INTRODUCTION

Every court and federal agency to have considered the question of whether an air ambulance company like Defendant Air Methods Corporation ("AMC") is a "common carrier by air" pursuant to the Railway Labor Act ("RLA") and as applied to the exemption from the Federal Labor Standards Act ("FLSA") has answered the question in the affirmative. *See Riegelsberger v. Air Evac EMS, Inc.*, 369 F.Supp.3d 901, 906 (E.D. Mo. 2019) (collecting cases and authorities); *Osborne v. Enchantment Aviation, Inc.*, 112 Fed. Appx. 673 (10th Cir. 2004); *Slavens v. Scenic Aviation, Inc.*, 221 F.3d 1353 (10th Cir. 2000); *McKinley v. Med-Trans Corp.*, 2010 WL 11530302, at *3 (E.D. Tex. 2010); D.O.L. Opinion Letter FLSA2005-10NA (Sept. 16, 2005); *In re TriState CareFlight, LLC*, 41 N.M.B. 55 (Apr. 14, 2014); *In re Rocky Mountain Holdings, LLC d/b/a Eagle Airmed of Ariz.*, 26 N.M.B. 132 (Jan. 12, 1999). Those courts and agencies have consistently held that air ambulance companies such as AMC fall squarely within the scope of the RLA Exemption. *Id*.

Several common facts emerge upon review of those cases: the air ambulance company's revenue came from its air ambulance services; the air ambulance company held a Part 135 Air Carrier Certificate from the Federal Aviation Administration ("FAA") authorizing it to "operate as an air carrier and conduct common carriage operations;" the air ambulance company provided services primarily to patients needing critical, emergency transportation initiated by hospitals, emergency medical services ("EMS"), and fire and police departments, and did not act on calls originating directly from the patients themselves; and the air ambulance received fees from third-party providers (i.e., private insurers, government payers like Medicare and Medicaid), the patients themselves (i.e., co-pays, membership fees) or, in some cases, did not receive a fee at all after it provided the service.

Likely because they could not locate contrary authority, Plaintiffs now ask this Court to discount the weight of authority, labeling it as "cursory, unpublished caselaw and summary opinions by the National Mediation Board and the Department of Labor"

4

FP 37756989.1

(Plaintiffs' Opposition Brief, ECF 146 (hereinafter, "Oppo."), at 1:18-19) and hold that AMC is not a common carrier by air.  Instead, Plaintiffs undertake a strained effort to reframe the undisputed facts to paint AMC as somehow performing different activities than other air ambulance companies, to paint them outside the common law test for common carrier by air status.

Second, notwithstanding the favorable caselaw with materially analogous facts, Plaintiffs also argue that Defendant is estopped from asserting the RLA Exemption as a defense because the language in new hire documents state that the clinician position was "non- exempt."  In an attempt to bolster their factual position, Plaintiffs provided self-serving declarations rife with improper lay opinions, unauthenticated and mischaracterized exhibits, with no proper foundation, and vague references to detriment without specific description of any actual harm incurred due to AMC's conduct.  Finally, Plaintiffs incorrectly attempt to frame the RLA Exemption of Air Carriers as a purely pro-employer piece of legislation, and in so doing they devalue the importance of the legitimate purposes of the unique regulatory framework that applies to air carriers and air ambulance providers, and the clear benefit to the public of such regulations.

## II. PLAINTIFFS' EVIDENCE SUBMITTED IN SUPPORT OF THEIR OPPOSITION IS INSUFFICIENT TO MEET THEIR BURDEN IN OPPOSITION TO THE MOTION

Plaintiffs submitted declarations in support of the Opposition. (Exhibits A (Cooley), B (Lemaster), C (Needham), and D (Collins) to the Opposition.)  However, the evidence they attempt to present is objectionable.  Plaintiffs Lemaster, Needham, and Collins each attach offer letters, then mischaracterize the contents of the offers in violation of the Best Evidence Rule, and making improper lay opinions about the purported exemption status under the FLSA. (Ex. B, ¶¶s 4-5; Ex. C, ¶ 2; Ex. D, ¶¶s 3-4.)  Each Plaintiff also makes statements, without foundation, about AMC's job descriptions, posting, and pay statements, and attach examples of each, without proper authentication. (Ex. A, ¶ 7; Ex. B, ¶2, 3, 7, 8; Ex. C; ¶¶s 6, 8, 9; Ex. D, ¶¶s 5, 6, 11.)  Plaintiffs make

additional improper lay statements of opinion about state law overtime laws and the FLSA exemption. (Ex. A, ¶ 4, 5, 8; Ex. B, ¶ 10; Ex. C, ¶¶s 7, 10; Ex. D, ¶ 12.)  Plaintiffs then mischaracterize the testimony of AMC's witness, attempting to expand a statement of lack of awareness about policies stating the company is subject to the RLA, to mean the company never indicated Plaintiffs were anything other than non-exempt or noneligible for overtime under the FLSA. (Oppo., at 2:24 – 3:1; Ex. F at 28:2-16.)  Plaintiffs also provided improper lay opinions about their pay statements and the company's "published policy" which is nowhere identified.  (Ex. A. ¶ 6; Ex. B, ¶ 7; Ex. C, ¶ 8; Ex. D, ¶ 9.)  Finally, Plaintiffs make improper characterizations and lay statements about their purported reliance on AMC's "promises and assertions" without identifying those same promises and assertions, to their purported "detriment, since the company has failed to compensate [Plaintiffs] in accord with these promises and assertions."  (Ex. A, ¶¶s 5, 9; Ex. B, ¶¶s 6, 11; Ex. C, ¶¶s 7, 11, Ex. D, ¶¶s 8, 13.)  These are extremely vague assertions, with no actual unpaid overtime identified.  Nowhere have Plaintiffs explained or provided evidence of their tangible injury or other detriment incurred as a result of specific conduct by AMC, nor of AMC's intent to deceive them about their pay.

### III.     AMC IS A "COMMON CARRIER BY AIR"

Plaintiffs' argument that AMC does not "hold itself out" to the relevant segment of the public, i.e. seriously ill or injured persons…" (Oppo., at 16:2-3) ignores clear case law and fails to rebut AMC's argument.  As stated in AMC's moving papers, it is immaterial that AMC markets its services to hospitals and other emergency service providers rather than responding to calls directly from the public. *See Riegelsberger*, 369 F.Supp.3d at 907; *see also Cheatham*, 910 F.3d at 764 (holding that the common carrier analysis does not turn on the fact that "Air Evac, like other air ambulance companies, relies on referrals from medical providers to dispatch its aircraft, rather than responding to calls directly from the public," just as "[a] train does not cease to be a common carrier simply because its tickets are exclusively sold through a third-party vendor").  Indeed, as the *Woolsey* court stated, carriers will qualify as common carriers if they "affirmatively

hold themselves out to the public, either by advertising or by a course of conduct evincing a willingness to serve members of the general public (or a segment thereof) indiscriminately…") *Woolsey v. National Transp. Safety Bd.*, 993 F.2d 516, 524 n. 24 (5th Cir. 1993)).

AMC has presented undisputed evidence that it is willing to serve members of the general public, or at least a segment thereof.  To provide individuals with access to emergency medical care, AMC markets its services to and collaborates with hospitals, emergency services providers, and EMS agencies, and has done so throughout the relevant time period. (Joint Stipulation of Facts, Doc. 100 ("Stipulation"), at ¶ 1).  AMC additionally, until recently, marketed and sold a membership program, under which members of the public could purchase memberships with AMC that would cover any out-of-pocket expenses related to an AMC helicopter transport. (Stipulation, at ¶ 1).  During the relevant time period from at least February 8, 2016 to the present[1], AMC has charged a fee for the services it has provided to the patients it transports, and AMC continues to charge such fees. (Exhibit 1 to the Motion ("Exhibit 1"), at ¶ 7). At all such relevant times, AMC has provided its services indiscriminately, without regard to a critically ill or injured patient's insured status, or any demographic attribute; and, AMC continues to do so. (Exhibit 1, at ¶ 8).  And, at all such relevant times, it has been AMC's policy and practice (which has been regularly and faithfully implemented), pursuant to agreements with the government agencies and hospitals that have retained AMC's services, to serve any patient in need, regardless of his or her ability to pay. (Exhibit 1, at ¶ 12).

Plaintiffs also argue that AMC does not qualify as a common carrier by air, because is "transports only patients referred to it by client care providers and who satisfy the company's detailed internal policies and state and federal regulations." (Opposition, at 16:9-11.)  Surprisingly, Plaintiffs attempt to support that argument by a citing a case

---

[1] The limitation period in this action extends back to February 8, 2017 (if the 2-year limitation period applies under the FLSA), and February 8, 2016 (if the 3-year limitation period applies for alleged "willful" violations).  29 U.S.C. § 255(a); Complaint (Doc. 001).

holding that air ambulance companies are indeed 'Common Carriers by Air', *Air Evac EMS, Inc., v. Cheatham* ("*Cheatham*"), 810 F. 3d 751 (4th Cir. 2018).  However, Plaintiffs' narrow, highly-selective statement from the *Cheatham* court's opinion ignores that court's broader affirmation of the defendant air ambulance company's status as a 'Common Carrier by Air.'  The *Cheatham* Court held:

> "Air ambulance companies fall squarely within the definition of common carriers. They respond whenever called by emergency medical providers. Patients need not be subscribers or have a preexisting contract to receive services. There is no individual bartering between the air ambulance company and the medical provider over whether to provide life-saving services. To argue otherwise, West Virginia makes much of the fact that Air Evac, like other air ambulance companies, relies on referrals from medical providers to dispatch its aircraft, rather than responding to calls directly from the public. The state, however, has offered no reason to think that the law turns on any such matter, especially when interpreting a general term like "common carrier." A train does not cease to be a common carrier simply because its tickets are exclusively sold through a third-party vendor. Air Evac, just like its industry competitors, serves the public indiscriminately and on equal terms, and that is what counts here."

*Cheatham*, 810 F. 3d 751, 764 (4th Cir. 2018).

Finally, Plaintiffs downplay the relevance of AMC's certification pursuant to, regulation by, and activity conducted pursuant to Part 135 of the Federal Aviation Regulations ("FAR"), 14 C.F.R. Part 135.  Plaintiffs' argument ignores the case law finding that conduct relating to licensure as a common carrier at least support a finding of common law common carrier. *See, e.g. Med-Trans Corp. v. Benton*, F.Supp.2d, 721, 733 (E.D.N.C. 2008) (citation omitted)  ("That an entity is licensed by the government as a common carrier supports that it is a common law common carrier." ).  In *Slavens*, the court found it important that the air ambulance company held an Air Carrier Certificate from the Federal Aviation Administration ("FAA") authorizing it to "operate as an air carrier and conduct common carriage operations." *Slavens v. Scenic Aviation*, 221 F.3d 1353 at *1 (10th Cir. 2000).  And the stringent safety requirements of Part 135 apply with special force in the context of an air ambulance provider such as AMC, where the person being transported (a critically ill patient) has no choice in the matter of whether to be

transported – with the decision to retain one carrier or another being made by professional medical service providers such as hospitals and government emergency services agencies. *See Cheatham*, *supra,* 910 F.3d at 764 (4th Cir. 2018).

It is clear that, throughout the relevant time period, AMC has held itself out to its target market, namely hospitals, dispatchers, EMS agencies, and individuals as being willing to transport for hire. Anyone can hire an AMC air ambulance for transportation of a critically ill or injured patient. AMC is willing to transport any individuals, indiscriminately. No determination is, or has been, made regarding the demographic category any individual fits within. Therefore, AMC is, and at all relevant times has been, a common carrier by air to which the overtime exemption applies. AMC's Motion for Partial Summary Judgment should be granted accordingly.

## IV. AMC IS NOT ESTOPPED FROM ASSERTING IT IS A COMMON CARRIER BY AIR

Plaintiffs attempt to rebut AMC's argument that estoppel may not be used as a means of avoiding the requirements of legislation enacted for the protection of the public interest, or produce a result contrary to public policy. To do so, Plaintiffs ask how the RLA Exemption protects the public interest. AMC directs Plaintiffs and the Court to the RLA itself. The RLA requires air carriers and employees to work together, "in order to avoid any interruption to commerce or to the operation of any carrier." 45 U.S.C. § 152. "In adopting the Railway Labor Act, Congress endeavored to bring about stable relationships between labor and management in this *most important national industry*." *Thibodeaux v. Exec. Jet Int'l, Inc.* 328 F.3d 742, 754 (5th Cir. 2003), citing *Bhd. of R.R. Trainmen v. Chicago River &* Ind. *R.R. Co.*, 353 U.S. 30, 40 (1957) (emphasis added). In other words, "[t]he purpose of the restrictive provisions of the Railway Labor Act is to keep transportation moving." *Id.*, citing *Pan Am. World Airways, Inc. v. United Bhd. Of Carpenters & Joiners of Am.*, 324 F.2d 217, 220 (9th Cir.1963). The RLA, and the RLA Exemption, are in place to ensure the public maintains access to transportation services, as the cessation of such services would impact the public at large. And undisputed

evidence in this case shows that medical flight crew, including Plaintiffs, and their availability to perform their duties, are critical and integral to AMC's air ambulance services and that AMC would not be able to operate its air ambulance services without the medical flight crew.  (Exhibit 1, at ¶¶s 10 and 11).

Next, Plaintiff cites "voluminous caselaw holding that estoppel may be raised to nullify an FLSA exemption defense."  (Oppo., at 6:23-24.)   However, the cases cited either find no estoppel is present, or do not conduct any analysis as to estoppel, generally, and as applied to the air carrier exemption to the FLSA, specifically. *See Molina v. First Line Soluations LLC*, 566 F. Supp. 2d770,  779-780 (N.D. Ill. 2007) (dealt with the motor carrier exemption to FLSA and only promissory estoppel, rather than equitable estoppel); *Kautsch v. Premier Communs.,* 205 F. Supp. 2d, 1007, 1015 (W.D. Mo. 2007) (found no estoppel with analogous facts); *Bell v. Foster Poultry Farms,* 2007 WL 896119 at *4 (E.D. Cal. March 22, 2007) (dealt with the motor carrier exemption and found no equitable estoppel); *Busgith v. Hudson News Co.*, 2008 WL 1771788 at *8 (Sup. Ct. N.Y. Apr. 8, 2008) (cites to *Kautsch* in dicta as part of waiver analysis, rather than estoppel analysis).

In any event, even if this Court should lend credence to Plaintiffs' inapposite citations and engage in an analysis of the equitable estoppel elements (which, as is discussed above, this Court should not), Plaintiffs fail to sufficiently support their estoppel theory to defeat summary adjudication. The elements of equitable estoppel, as recognized by federal common law, include: (1) a misstatement of a material fact; (2) the party to be estopped was aware of the true facts; (3) the party intended that the misstatements be acted on or had reason to believe that the recipient of  the information would rely on it; (4) the recipient of the information did not know, nor should have known, the true facts; and (5) the recipient of the information reasonably and detrimentally relied on the misstatements to his injury. *See Heckler v. Cmty. Health Servs*, 467 U.S. 51, 59 (1984); *California State Board of Equalization v. Coast Radio Products*, 228 F.2d 520, 525 (9th Cir.1955).  Each element must be established in order for a claim to succeed in

preventing a party from relying upon an affirmative defense. *Id.*; *Kautsch, supra*, 205 F. Supp. 2d, at 1015; *Bell, supra,* 2007 WL 896119 at *4 (E.D. Cal. March 22, 2007). Equitable estoppel can only be applied to remedy an inequity, is to be applied with the utmost caution and restraint, and should be used only in exceptional circumstances. *See Estate of Carberry v. Commissioner of Internal Revenue*, 933 F.2d 1124, 1127 (2d Cir.1991) (*internal quotation marks and citations omitted*); *Redman v. U.S. West Business Resources, Inc.*, 153 F.3d 691, 695-696 (8th Cir. 1998) (citing *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1329 (8th Cir. 1995). The party asserting estoppel must show an actual injury or loss. *See California State Board of Equalization v. Coast Radio Products*, *supra*, 228 F.2d at 525 (9th Cir.1970). Here, Plaintiffs will be unable to establish by undisputed evidence that AMC's conduct warrants application of this exceptional remedy.

First, Plaintiffs' claims that AMC should be estopped from asserting the RLA exemption due to statements made by its management personnel and/or in employee handbooks and the like (Amended Complaint, at ¶143) have been squarely rejected. *See Riegelsberger*, *supra,* 369 F.Supp.3d, at 908. In *Kautsch*, cited by Plaintiffs in the Opposition, the court found no estoppel against the employer, where its "new hire forms and a…letter sent from [its] counsel to the Department of Labor" classified employees as non-exempt. *Kautsch, supra*, 205 F. Supp. 2d, at 1015. The Court held that the employees did not allege that they took any action on the faith of Defendant's statement or act. *See Id.* Here, as in *Riegelsberger* and *Kautsch*, Plaintiffs allege that new hire forms and other company documents state that they and other employees were 'subject to the overtime provisions of the FLSA'. So, statements in new hire and other employment documents don't appear to be determinative.

As for AMC's alleged intent to deceive, equitable estoppel is not warranted where there is no "evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct." *O'Donnell v. Vencor, Inc.,* 465 F.3d 1063, 1067 (9th Cir. 2006), cited in *Bell, supra,* 2007

11

WL 896119 at *4 (E.D. Cal. March 22, 2007). Plaintiffs cite to the 30(b)(6) deposition in an attempt to attach some intent on the part of AMC to deceive Plaintiffs and other employees. The testimony cited, however, does not establish any intent on the part of AMC. Rather, the testimony provides context beyond the documents, noting that: AMC uses standard forms for its offer letters and position descriptions; and the complexities of clinician payment arrangements are not conveyed in the offer letters and position descriptions…they are contained in various other documents, such as 24-hour agreements. (Oppo., at 11:9-18, 12:12-16.) And AMC's payment of weekly overtime is paid in compliance with the RLA and the 24-Hour agreements permitted therein. (Id.)

Finally, Plaintiffs will be unable to establish by undisputed evidence that they have or will suffer actual damages as a result of AMC's conduct. Plaintiffs' declarations assert by improper lay opinion that they were not paid overtime as required by the FLSA. Such statements are inadmissible. Based upon the foregoing, Plaintiffs' equitable estoppel claim must be barred.

## V.     OBJECTIONS TO PLAINTIFFS' EVIDENCE

Pursuant to Local Rule 7.2, and this Court's Scheduling Order (Doc. 51), Defendant hereby makes the following objections to Plaintiffs' evidence presented in support of their Opposition, Exhibits A (Cooley), B (Lemaster), C (Needham), D (Collins) and F (30b6 Deposition Transcript) to the Opposition:

- Ex. B, ¶¶s 4-5; Ex. C, ¶ 2; Ex. D, ¶¶s 3-4: Irrelevant to the issues raised in motion (*Federal Rules of Evidence* §402); Hearsay (*Federal Rules of Evidence* §802); Violates the Best Evidence Rule (*Federal Rules of Evidence* §1002); Improper characterization (*Federal Rules of Evidence* §§404-405).
- Ex. A, ¶ 7; Ex. B, ¶¶s 2, 3, 7, 8; Ex. C; ¶¶s 6, 8, 9; Ex. D, ¶¶s 5, 6, 11: Lacks foundation, personal knowledge (*Federal Rules of Evidence* §602); Hearsay (*Federal Rules of Evidence* §802); Irrelevant to the issues raised in motion (*Federal Rules of Evidence* §402); Improper opinion of a lay witness

(*Federal Rules of Evidence* §§701, 702); Lack of authentication (*Federal Rules of Evidence* §901).

- Ex. A, ¶¶s 4, 5, 8; Ex. B, ¶ 10; Ex. C, ¶¶s 7, 10; Ex. D, ¶ 12: Improper characterization (*Federal Rules of Evidence* §§404-405); Lacks foundation, personal knowledge (*Federal Rules of Evidence* §602); Irrelevant to the issues raised in motion (*Federal Rules of Evidence* §402); Improper opinion of a lay witness (*Federal Rules of Evidence* §§701, 702).

- Ex. A. ¶6; Ex. B, ¶ 7; Ex. C, ¶ 8; Ex. D, ¶ 9: Lacks foundation, personal knowledge (*Federal Rules of Evidence* §602); Violates the Best Evidence Rule (*Federal Rules of Evidence* §1002); Irrelevant to the issues raised in motion (*Federal Rules of Evidence* §402); Improper opinion of a lay witness (*Federal Rules of Evidence* §§701, 702).

- Ex. A, ¶¶s 5, 9; Ex. B, ¶¶s 6, 10; Ex. C, ¶¶s 7, 11, Ex. D, ¶¶s 8, 13: Improper characterization (*Federal Rules of Evidence §§404-405*); Lacks foundation, personal knowledge (*Federal Rules of Evidence* §602); Violates the Best Evidence Rule (*Federal Rules of Evidence* §1002); Irrelevant to the issues raised in motion (*Federal Rules of Evidence* §402); Improper opinion of a lay witness (*Federal Rules of Evidence* §§701, 702).

- Ex. D, ¶¶s 7-8: Lacks foundation, personal knowledge (*Federal Rules of Evidence* §602); Irrelevant to the issues raised in motion (*Federal Rules of Evidence* §402); Improper opinion of a lay witness (*Federal Rules of Evidence* §§701, 702).

- Ex. B, ¶ 9; Ex. C, ¶ 6; Ex. D, ¶ 10: Lacks foundation, personal knowledge (*Federal Rules of Evidence* §602); Hearsay (*Federal Rules of Evidence* §802); Irrelevant to the issues raised in motion (*Federal Rules of Evidence* §402); Improper opinion of a lay witness (*Federal Rules of Evidence* §§701, 702); Lack of authentication (*Federal Rules of Evidence* §901).

/ / /

- Oppo., at 2:24 – 3:1; Ex. F at 28:2-16: Improper mischaracterization (*Federal Rules of Evidence* §§404-405.)

## VI. CONCLUSION

The law is clear. The undisputed material facts clearly establish as a matter of law that AMC is exempt from the overtime provisions of the FLSA, and AMC's employees engaged in its transportation activities, including Plaintiffs, are not entitled to overtime compensation under the FLSA. Moreover, Plaintiffs' alternative claim for equitable/promissory estoppel is barred because it would result in a contravention of public policy, by impacting AMC's ability to continue operations, and because AMC did not intend to deceive Plaintiffs to their detriment.  Accordingly, AMC respectfully requests this Court grant its Motion for Partial Summary Judgment, enter judgment in its favor on Counts 1 and 3, and Count 2, to the extent it seeks overtime premiums on off-the-clock work, award AMC its costs and attorneys' fees, and such other relief as the Court deems just and proper.

Date: April 28, 2020

FISHER & PHILLIPS LLP

By: /s/ *Sean T. Kingston*
Lonnie D. Giamela
Sean T. Kingston
Christopher M. Ahearn

Attorneys for Defendant
Air Methods Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2020 I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

| | |
|---|---|
| Michael J Lingle | mlingle@theemploymentattorneys.com |
| Laura Ann E Bailey | lbailey@cronelawfirmplc.com |
| Philip Oliphant | poliphant@cronelawfirmplc.com |
| Alan G Crone | acrone@cronelawfirmplc.com |

　　　　　　　　　　　　　　　　　　　　/s/ *Sean T. Kingston*

1

FP 37756989.1