**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Cooley, et al., | No. CV-19-00850-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Air Methods Corporation, | |
| Defendant. | |

Plaintiffs Kenneth Cooley, Jeremy Lemaster, Robert Needham and Jamie Collins bring, on behalf of themselves and all others similarly situated, this action against Air Methods Corporation ("AMC") for alleged violations of the Fair Labor Standards Act ("FLSA"). At issue is Plaintiffs' motion for conditional certification, or in the alternative, final certification (Doc. 215), in which they seek, inter alia, to conditionally certify similarly situated workers as a class for purposes of pursuing a collective FLSA action under 29 U.S.C. § 216(b). The motion is fully briefed (Docs. 216, 223, 228), and neither party requested oral argument. For the following reasons, Plaintiffs' motion is granted, but for a narrower collective than requested.

**I. Background**

AMC is an air ambulance company that provides emergency air medical transport by helicopter to patients with life-threatening injuries and illnesses. (Doc. 137-1 at 5.) Plaintiffs are current and former hourly employees of AMC in Arizona, New Mexico,

Wyoming, Texas, and Oklahoma that serve as medical flight crew members.[1] (Doc. 82 at 6-7; Doc. 146 at 6.)  Plaintiffs allege that AMC did not compensate them or similarly situated employees nationwide for all the overtime to which they would have been entitled under the FLSA.  Specifically, Plaintiffs contend that AMC's compensation plan deducts hours slept during a 24-hour shift ("sleep time") from overtime compensation. (Doc. 82 at 2.)

On August 20, 2020, Plaintiffs filed their motion for conditional certification, or in the alternative, final certification. (Doc. 215.)  The motion seeks certification of the following collective: "all medical flight crew members employed by Defendant from February 8, 2016 to present whom Defendant failed to pay overtime premiums for hours worked over forty in a work week." (Doc. 216 at 2.)  It also seeks (1) an order directing AMC to produce to Plaintiffs' counsel a list containing the names, addresses, phone numbers, and email addresses for all AMC's medical flight crew members for the three years prior to the filing of the complaint that worked 24-hour shifts, (2) authorization to send notice and a consent to join form to all individuals appearing on AMC's list by first-class mail or email, (3) authorization to send a reminder notice and consent to join form 45 days prior to the end of the notice period, (4) an order tolling the statute of limitations for the putative collective as of the date the action was filed, (5) an order declaring the opt-in plaintiffs' consent forms to be deemed filed on the date postmarked, and (6) an order directing AMC to post Plaintiffs' proposed notice at all locations where putative members work. (Doc. 215 at 3.)

**II.  Legal Standard**

The FLSA prohibits covered employers from employing any employees "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "Any employer

---

[1] The term "medical flight crew members" includes flight nurses and paramedics, senior flight nurses and paramedics, master flight nurses and paramedics, regional float flight nurses and paramedics, and senior regional float flight nurses and paramedics. (Doc. 216 at 2.)

who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation[.]" *Id.* § 216(b). A collective action to recover these damages may be brought "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.* Employees not named in the complaint who wish to join the action must give their consent in writing to the court in which the action is brought. *Id.*

"Section 216(b) does not define 'similarly situated,' and the Ninth Circuit has not construed the term." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010). However, "district courts within the Ninth Circuit generally follow the two-tiered or two-step approach for making a collective action determination." *Id.*; *see also Villarreal v. Caremark LLC*, No. Cv-14-00652-PHX-DJH, 2014 WL 4247730, at *3 (D. Ariz. Aug. 21, 2014) ("The majority of courts, including those within the District of Arizona, have adopted the two-tiered approach in deciding whether to grant FLSA collection action status." (internal quotations and alterations omitted)).

Under this approach, the Court first makes an initial "notice stage" determination of whether the plaintiffs are similarly situated. During this first stage, the Court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. If the plaintiffs survive this hurdle, the Court will conditionally certify the proposed class and the lawsuit will proceed to a period of notification, which will permit the potential class members to opt into the lawsuit. Once the notification period ends, the Court moves on to the second step of the certification process. At the second step, in response to a motion to decertify the class filed by the defendant, the Court makes another determination whether the proposed class members are similarly situated; this time, however, the Court applies a much stricter standard to scrutinize the nature of the claims. *Colson*, 687 F. Supp. 2d at 925 (internal citations and some quotations omitted).

Plaintiffs' "burden is light," but conditional certification is "by no means

- 3 -

automatic." *Id.* "The level of consideration is . . . akin to a plausibility standard." *Campbell v. City of L.A.*, 903 F.3d 1090, 1109 (9th Cir. 2018.) The allegations need be neither "strong [n]or conclusive;" Plaintiffs need only show "that there is some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." *Colson*, 687 F. Supp. 2d at 926. "Plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members." *Juvera v. Salcido*, 294 F.R.D. 516, 520 (D. Ariz. 2013) (internal quotations omitted).

Whether a collective action should be conditionally certified ultimately is within the discretion of the Court. *Colson*, 687 F. Supp. 2d at 925. But, "[g]iven the light burden, motions to conditionally certify a class . . . are typically granted." *Stickle v. SCI W. Market Support Center, L.P.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *3 (D. Ariz. Sept. 30, 2009) (citation omitted). The Court should not review the underlying merits of the action, nor should it "resolve factual disputes . . . at the preliminary certification stage of an FLSA collective action." *Id.* at 926. "The court's determination at this first step is based primarily on the pleadings and any affidavits submitted by the parties." *Kelsey v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1065 (D. Ariz. 2014) (internal quotations omitted).

### III. Discussion

#### A. Certification

Plaintiffs have met their low burden for conditional certification. Plaintiffs have produced evidence indicating that they are similarly-situated to AMC medical flight crew members nationwide because all were employed on two-person medical flight crews by AMC, worked at least two weekly 24-hour shifts under a uniform 24-hour shift agreement, and did not receive overtime compensation for sleep time under AMC policy. Specifically, Plaintiffs' relevant evidence[2] includes excerpts of AMC's nationwide employee handbook (Doc. 215-4), sample 24-hour shift agreements (Doc. 215-5), a 24-hour agreement signed

---

[2] AMC objects to the affidavit provided by Plaintiffs' counsel. However, Plaintiffs have made a plausible showing that the named and opt-in plaintiffs are similarly situated without counsel's affidavit.

- 4 -

by an individual other than a named plaintiff (*Id.* at 8), and portions of a 30(b)(6) deposition (Doc. 215-6). This evidence indicates that nationwide AMC medical flight crew employees, working at least two 24-hour shifts weekly, are required to sign a 24-hour shift agreement, which, despite representing its "compliance with the [FLSA,]" underscores that sleep time "shall not be considered hours worked toward the 40 hour work week and paid at the employee's regular rate of pay." (Doc. 215-5 at 6, 8.) In sum, Plaintiffs have made a plausible showing that they and AMC medical flight crew members nationwide were the victims of a uniform policy that deducted sleep time from overtime compensation.

AMC seeks to narrow the proposed class to only individuals living or working in Arizona, arguing that "the Court lacks personal jurisdiction over AMC as it relates to the claims of named and opt-in [p]laintiffs who did not live or work in Arizona because the claims did not arise from AMC's activity within Arizona." (Doc. 223 at 13.) All but one of the named plaintiffs neither worked nor lived in Arizona. Despite dispositive motion practice and over 19 months of litigating this case, AMC not once raised personal jurisdiction challenges before filing its response to Plaintiffs' motion for conditional certification. AMC has waived this personal jurisdiction argument. *Neirbo Co. v. Bethlehem Corp.*, 308 U.S. 165, 168 (1939).

Even if AMC's personal jurisdiction challenge were timely, its reliance on *Bristol-Myers* to argue lack of specific personal jurisdiction is misguided. *See Bristol-Myers*, 137 S.Ct. 1773 (2017) (holding that due process did not permit the exercise of specific personal jurisdiction over nonresidents' state products liability claims in non-federal case). *Bristol-Myers* does not apply in the FLSA collective action context; its application would eviscerate FLSA collective actions and thwart Congressional intent. *See Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017) ("*Bristol-Myers* does not apply to divest courts of personal jurisdiction in FLSA collective actions. Unlike the claims at issue in *Bristol-Myers*, we have before us a federal claim created by Congress specifically to address employment practices nationwide."); *Seiffert v. Qwest Corp.*, CV-18-70-GF-BMM, 2018 WL 6590836, at *2-4 (D. Mont. Dec. 14, 2018)

("*Bristol-Myers* does not divest the Court's personal jurisdiction over [the plaintiff's] 'similarly situated' class under the FLSA, regardless of where the Opt-in Plaintiffs may have suffered the alleged injury. Nothing in the plain language of the FLSA limits its application to in-state plaintiffs' claims."); *Garcia v. Peterson*, 319 F. Supp. 3d 863, 880 (S.D. Tex. 2018) ("*Bristol-Myers* should not apply to [] FLSA collective actions [given] the extra protection provided in certifying a class under [] the FLSA.").

AMC also objects to conditional certification of Plaintiffs' proposed class, emphasizing that, when addressing AMC's motion for partial summary judgment, the Court found that Plaintiffs are exempt from the FLSA's overtime requirements. (Doc. 153 at 4.) In making this determination, the Court also found that Plaintiffs have made a prima facie case of equitable estoppel, which, if successful, could preclude Defendant from arguing its FLSA exemption. (*Id.* at 5-6.) AMC is correct that equitable estoppel plays an essential role in this case. But the Court is unpersuaded that its presence should foreclose class certification, at least at this early stage.[3]

However, considering that Plaintiffs' overall success is dependent on the success of their equitable estoppel claim, Plaintiffs' proposed class is too broad. Plaintiffs are not similarly situated to workers to whom AMC did not make representations of FLSA non-exempt status because the single policy affecting all class members necessarily includes such representations. Relatedly, Plaintiffs' description of the class as all AMC flight crew members whom Defendant failed to pay overtime premiums for hours worked over forty in a work week—generally—rather than solely associated with sleep time is too broad. The evidence Plaintiffs provide at the conditional certification stage exclusively relates to AMC's policy of deducting sleep time from overtime compensation, not a more widespread policy to otherwise neglect to compensate for overtime. Consequently, the Court will conditionally certify[4] the following narrower collective: "all medical flight crew members

---

[3] AMC argues that class certification is inappropriate because Plaintiffs have not shown that putative members have *met* the elements of estoppel. The Court does not review the underlying merits at this stage. The Court's determination at this juncture does not foreclose AMC from making related equitable estoppel arguments at certification's second stage.

[4] The Court denies Plaintiffs' request to forego the "near-universal" two-step

- 6 -

employed by AMC from February 8, 2016 to present to whom AMC represented were FLSA non-exempt but experienced a "sleep time" deduction from their overtime compensation."

**B. Notice**

District courts may order notice to inform similarly situated employees of their right to opt into the case. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). Plaintiffs request that the Court (1) authorize them to send their proposed notice and a consent to join form to all putative class members, (2) authorize them to send identical forms to all putative class members a second time 45 days before the opt-in deadline and (3) order AMC to post notice at all locations where putative members work. AMC does not object to posting notice in the workplace but argues that a third-party administrator should manage the mailing of notices to ensure neutrality and fairness and that notice should not be given to any members of the AMC employee class-action settlements in California and Kentucky.[5]

First, the Court agrees that reliance on a third-party administrator is "the best way to ensure the neutrality and integrity of the opt-in process." *Prentice v. Fund for Pub. Interest Research, Inc.*, No. C-06- 7776 SC, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007). Second, AMC is correct that members of the Kentucky settlement should be foreclosed from opting in to the class. The United States District Court for the Eastern District of Kentucky Central Division issued a final approval of settlement in *Day v. AMC*, No. 5:17-CV-183-CHB. As part of the settlement, members agreed to release "any and all claims they have or may have against [AMC] arising out of or relating to the manner in which they were compensated by [AMC] up to the date they sign the agreement." (Doc. 223-2 at 43, 73-75). AMC confirms that no Kentucky settlement member has worked for

---

certification process, instead skipping to final certification. *Campbell.*, 903 F.3d at 1117. Plaintiffs have cited no case law indicating that such an unorthodox approach is appropriate and the Court is disinclined to depart from well-settled practice.

[5] The Court takes judicial notice of the Kentucky and California settlement filings provided by AMC. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 n. 6 (9th Cir. 2006) (Courts "may take judicial notice of court filings.").

AMC after the signing of the release and cannot qualify for distinct recovery here. In contrast, based on the filings available to the Court, it appears that final approval of settlement has not been issued in the California case, *Helmick v. AMC*, No. RG13665373. (Doc. 223-2 at 79-80.) It is therefore premature to determine whether *Helmick* settlement members should be foreclosed from opting in. At this juncture, the Court will withhold notice from *Day* settlement members but not *Helmick* settlement participants.[6] Accordingly,

**IT IS ORDERED** as follows:

1. Plaintiffs' motion for conditional class certification (Doc. 215) is **GRANTED** as explained herein.

2. This action is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b). Covered employees include all medical flight crew members employed by AMC from February 8, 2016 to present to whom AMC represented were FLSA non-exempt but experienced a "sleep time" deduction from their overtime compensation.

3. By no later than **October 1, 2020**, AMC shall produce names, last known mailing addresses, last known email addresses, and phone numbers for all potential class members.

4. The parties are ordered to meet and confer to draft joint proposed notice and consent-to-join forms. Plaintiffs will be permitted to send an initial notice and consent-to-join form and an identical reminder notice and consent-to-join form 45 days prior to the end of the notice period to all potential class members, excluding members of the Kentucky class action settlement as described above. AMC shall be required to post the notice ultimately approved by the Court at all its work locations where potential class members work.

5. The parties shall submit drafts of their joint proposed notice and consent-to-join form to the Court by no later than **October 5, 2020**. If the parties cannot resolve

---

[6] Once the court issues final settlement approval in *Helmick*, AMC may seek to remove or exclude any *Helmick* settlement members from the opt-in process.

all disagreements as to these documents, they may instead on this date submit a joint explanation of the parties' disagreements, limited to **8 pages**.

6. The parties shall select a mutually agreeable third-party administrator no later than **October 9, 2020**.
7. The Court will set a deadline for issuing the notice and consent-to join form after final review and approval of the parties' documents. In its order setting deadlines, the Court will address the remaining issues of tolling and the date in which consent-to-join forms are deemed filed.

Dated this 25th day of September, 2020.

Douglas L. Rayes
United States District Judge