Alan G. Crone, TN Bar No. 014285
Philip Oliphant, TN Bar No. 025990
THE CRONE LAW FIRM, PLC
88 Union Avenue, 14th Floor
Memphis, TN 38103
901.737.7740 (voice)

Mike Lingle
THOMAS & SOLOMON, LLP
693 East Avenue
Rochester, NY 14607
585.272.0540 (voice)

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**Kenneth Cooley, Jeremy Lemaster,**

**Robert Needham, and**

**Jamie Collins**, *on behalf of*

*themselves and all others similarly situated*

      **Plaintiffs,**

**Civil Action, Case No.: 2:19-cv-00850**

**v.**      **JURY DEMANDED**

**Air Methods Corporation,**

*a Delaware Corporation*
      **Defendant.**

---

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**

---

**MOTION**

The Parties to this action, by and through counsel, respectfully move the Court for Preliminary Approval of Settlement. The Parties have agreed to a resolution of this lawsuit that is reasonable and fair to the Collective. This Motion is based on and supported by the Court's entire record of this matter, the memorandum of points and authorities provided below; and the exhibits attached hereto.

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Parties reached a fair and reasonable arm's length settlement at the conclusion of a vigorous discovery period and while three dispositive motions were pending before the Court. Defendant has agreed to resolve Plaintiffs' claims in exchange for payments totaling $5,800,000.00. The Parties now present the Court with the Parties' proposed Settlement Agreement and Release (Ex. A.) and request preliminary approval of its terms as fair and reasonable as required under the Fair Labor Standards Act. Specifically, the Parties request that the Court enter an order: (1) granting preliminary approval of the proposed Settlement Agreement and Release provided in Exhibit A to this motion; (2) approving the form, manner and content of the Notice of Settlement provided in Exhibit B to this motion; (3) approving the form, manner and content of the Request for Exclusion provided in Exhibit C to this motion; (4) requiring that Defendant provide the designated Settlement Administrator with collective information for purposes of mailing notice of the settlement to Collective Members within fourteen days after entry of the preliminary approval order; (5) requiring that the designated Settlement Administrator send a copy of the Notice of Settlement and Opt-Out Form to all collective members

2

within twenty-one days after receiving collective information from Defendant; (6) requiring Plaintiffs' counsel to file with the Court a Motion for Final Approval of the settlement within sixty days of the original mailing of the notice of settlement; (7) setting the Final Approval hearing for approximately ninety days after Preliminary Approval of Settlement; (8) requiring that the Parties request that the Court sign a Final Approval Order and enter Judgment within seven days of the Court granting the Motion for Final Approval; (9) requiring that the designated Settlement Administrator provide collective members with notice of final approval and entry of judgment via its website for a period of sixty days; (10) requiring that within thirty days after the effective date of the settlement Defendant provide 50% of the Net Settlement Fund to the designated Settlement Administrator for immediate disbursement; (11) requiring that within one year after the effective date of the settlement Defendant provide the remaining 50% of the Net Settlement Fund to the designated Settlement Administrator for immediate disbursement;(12) staying all other proceedings pending Final Approval.

## RELEVANT BACKGROUND

I. **PROCEDURAL BACKGROUND**

   a. **Plaintiffs Filed a Collective Action Lawsuit**

This Civil Action was initiated on February 8, 2019, upon the filing of a Complaint (Docket Entry No. 1.) by Plaintiffs Kenneth Cooley, Jeremy Lemaster, Robert Needham, and Jamie Collins, and amended on September 6, 2019. (Docket Entry No. 82.) This is an action alleging overtime violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

Plaintiffs presented their claims under the FLSA as a Collective Action by giving similarly-situated past and present employees of Defendant, Air Methods Corporation ("AMC"), the opportunity to join as party-plaintiffs by filing a notice of consent pursuant to 29 U.S.C. § 216 (b). AMC filed its Answer (Docket Entry No. 23.) on March 12, 2019, and filed its Answer to the Amended Complaint on September 23, 2019. (Docket Entry No. 88.)

On August 20, 2020, Plaintiffs filed their Motion for Conditional Certification as a Collective Action. (Docket Entry No. 215.) Plaintiffs' motion was granted on September 25, 2020. (Docket Entry No. 230.) The Court approved the Proposed Notice and Consent-to Join Form on October 27, 2020. (Docket Entry No. 243.) In February 2021, the opt-in process was completed, resulting in a collective of over 1,050 members.

While litigation in the present matter continued, three separate wage and hour lawsuits against AMC reached settlement.  Those matters were *Helmick v. AMC*, Superior Court of California, No. RG13665373; *Day v. AMC*, U.S. District Court for the Eastern District of Kentucky, No. 5:17-CV-183-CHB; and *Wagner v. AMC*, U.S. District Court of Colorado, No. 1:19-cv-00484. Certain participants in those settlements are foreclosed under the law, in part or whole, from participation in the settlement of the present matter, and the definition of the present collective is in the process of being finalized. The Parties' best estimate as to the final number of collective members is 951.

On January 12, 2022, the Parties filed a Notice of Settlement. (Docket Entry No. 363.) In response, the Court ordered the Parties to submit a joint motion for preliminary approval of the settlement by February 2, 2022. (Docket Entry No. 364.) This deadline

was subsequently extended by the Court to February 9, 2022. (Docket Entry No. 365.) and to February 23, 2022. (Docket Entry No. 368.) The Court vacated all other deadlines and ordered that all pending motions are denied as moot. (Docket Entry No. 364.)

### b. The Parties Engaged in Extensive Discovery

The Parties engaged in extensive and time-consuming discovery over a two-year period, including a 30(b)(6) deposition on November 12, 2019 and culminating in the completion of the deposition of all four Named Plaintiffs on April 28, 2021. The discovery period formally ended on May 21, 2021. (Docket Entry No. 323.)

### c. The Parties Argued Time-consuming Dispositive Motions

The Parties engaged in arduous and time-consuming briefing regarding the merits of the case. On March 6, 2020, Defendant filed a Motion for Partial Summary Judgment, arguing that it was exempt from the overtime provisions of the FLSA and challenging Plaintiffs' assertion of equitable estoppel as a matter of law. (Docket Entry No. 137.)  On May 4, 2020, Defendant's motion was denied. (Docket Entry No. 153.)

On August 24, 2021, Plaintiffs filed a Motion for Partial Summary Judgment as to Plaintiffs' fundamental overtime claim; their assertion of equitable estoppel; and Plaintiffs' claim that Defendant's overtime violations were made in bad faith. (Docket Entry No. 326.) On August 30, 2021, Defendant filed a Motion for Decertification of the collective. (Docket Entry No. 327.) On the same day, it filed a second Motion for Summary Judgment. (Docket Entry No. 335.) Until the Parties' Notice of Settlement, the three August 2021 motions remained pending before the Court. In its January 12, 2022 order, the Court denied all three motions as moot. (Docket Entry No. 364.)

## II. SETTLEMENT DISCUSSIONS

On July 30, 2020, the Parties and their respective counsel engaged in mediation before a private mediator in Phoenix, Arizona. The Parties were unable to reach a settlement, despite the Parties' good faith efforts.

Following the unsuccessful mediation, the Parties' respective counsel continued to negotiate. Their arm's length negotiations have resulted in the present proposed agreement settling Plaintiffs' FLSA Collective Action claims in their entirety.

## III. THE PARTIES' SETTLEMENT AGREEMENT AND RELEASE

The details of the Parties' settlement are contained in the Settlement Agreement and Release. (Ex. A.) For purposes of preliminary approval, the following summarizes the key terms.

### a. The Collective

The persons contemplated in this settlement include all individuals who have timely and properly opted-in to the action and who are not precluded from participation by their participation in the *Helmick, Day* or *Wagner* settlements with AMC. The Court has previously defined the conditionally certified collective as including "all medical flight crew members employed by AMC from February 8, 2016 to present to whom AMC represented were FLSA non-exempt but experienced a 'sleep time' deduction from their overtime compensation." (Docket Entry No. 230, p. 8.)

### b. The Settlement Amount and Distribution Formula

To settle Plaintiffs' claims, Defendant has agreed to pay a Gross Settlement Amount of five million, eight-hundred thousand dollars ($5,800,000.00). This includes

settlement awards to Collective Members, service awards to Named Plaintiffs, attorneys' fees and costs, and settlement administration costs.

### 1) The Maximum Total Claims Amount Paid to the Collectives

The Parties agree to allocate individual settlement payments to each Collective Member using a *pro rata* share of the Gross Settlement Amount based upon the Parties' stipulated calculation of alleged damages. Specifically, each Collective Member's settlement share was first calculated by determining the amount of sleep time overtime pay Plaintiffs have alleged they should have been paid but not were paid, at the overtime rate of one and a half times their regular rate of pay, during their employment with AMC, from February 8, 2016 to present. The total alleged under-compensation for each Member was then divided by the total alleged under-compensation for the entire Collective to arrive at each Member's percentage of the entire settlement fund, after the expenses and fees described above were deducted.

### 2) Plaintiff Service Payments

The Parties agree to set aside $10,000 from the Gross Settlement Amount for each of the four Named Plaintiffs. These amounts are in addition to these Plaintiffs' *pro rata* allocations. These payments provide Plaintiffs with compensation for their service on behalf of the collective. For example, the Named Plaintiffs sat for lengthy depositions, produced documents, and regularly and routinely interacted with Counsel on behalf of themselves and the collective.

### 3) Attorneys' Fees and Litigation Costs

The Parties agree to allocate twenty-five percent (25%) of the Gross Settlement Amount to Plaintiffs' attorneys' fees. This amount equals $1,450,000 and represents a percentage considerably less than that Plaintiffs agreed to in their legal services agreement with Counsel. Additionally, $16,443 of the Gross Settlement Amount will be allocated as reimbursement for Plaintiffs' litigation costs and expenses.

### 4) Settlement Administration

The Parties have agreed to secure the settlement administration services of Simpluris, Inc. The Parties have selected Simpluris based upon the company's competitive pricing and previous extensive involvement in similar-sized settlements. Simpluris has quoted $16,133.07 for its complete services in administering this settlement. Settlement administration fees will be paid from Gross Settlement Amount.

### c. Release of Claims

The Settlement Collective Members, including Named Plaintiffs, agree to release Defendant and all of its past or present subsidiaries, related companies, parents, successors, assigns, current and former managers, employees, owners, officers, directors and agents from any and all claims arising out of or relating to the manner in which they were compensated by Defendant.

### d. Notice to the Collective

Within fourteen days of the Court's order on this motion, Defendant will provide the designated Settlement Administrator with collective information for purposes of mailing notice of the settlement to Collective Members. This information will include each

8

Collective Member's full name; last known address; employee identification number; and the amount of wages owed pursuant to the settlement agreement.

The designated Settlement Administrator will then send a copy of the of the notice of settlement, along with an Opt-out Form, to all collective members within twenty-one days after receiving collective information from Defendant

### e) Final Approval, Settlement Payments, Administration, and Dismissal

Within sixty days of the original mailing of the notice of settlement, Plaintiffs' counsel will file with the Court a Motion for Final Approval of the settlement. If the Court grants final approval of the settlement, within seven days from the approval the Parties will request that the Court sign a Final Approval Order and enter Judgment. The designated Settlement Administrator will then provide Collective Members with notice of final approval and entry of judgment via its website for a period of sixty days. Within thirty days after the effective date of the settlement[1] Defendant will provide 50% of the Net Settlement Fund to the designated Settlement Administrator for immediate disbursement. Within one year after the effective date of the settlement Defendant will provide the remaining 50% of the Net Settlement Fund to the designated Settlement Administrator for immediate disbursement.

For tax purposes, twenty-five percent (25%) of each settlement amount paid to a Collective Member will be reported on IRS Form W-2 as wages. The remainder will be

---

[1] Effective date is defined here as the day after the date upon which any appeal right associated with the Final Approval Order has expired.

reported on IRS Form 1099_MISC. Defendant is separately responsible for payment of the employer's share of payroll taxes resulting from the settlement.

Any settlement checks that are not negotiated within 180 days will be void, with the associated funds to be returned to AMC.

## **LEGAL ANALYSIS**

Employees cannot bargain, waive, or modify their rights under the FLSA except under narrow circumstances. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). In order to approve the settlement of an FLSA action, therefore, a court must find that the agreed-upon settlement represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" before a release and satisfaction of claims can be valid. *Id.* at 1355.

This standard is lower than the standard for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement. *See McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) (explaining that under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date"); *DeWitt v. Darlington Cnty.*, No. 4:11-CV-00740, 2013 WL 6408371, at *3 (D.S.C. Dec. 6, 2013). In other words, Plaintiffs do not have to satisfy the Rule 23 settlement factors espoused in *Hanlon v. Chrysler*, 150 F.3d 1022, 1026 (9th Cir. 1998).

"In reviewing a private FLSA settlement, the district court's '[o]bligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the

Act's purposes.'" *Fontes v. Drywood Plus, Inc.*, No. CV-13-1901, 2013 WL 6228652, at *6 (D. Ariz. Dec. 2, 2013) (citation omitted).

Under this standard, Plaintiffs now ask the Court to determine that the Parties' Settlement Agreement and Release represents a fair and reasonable resolution of a *bona fide* FLSA dispute. The Settlement Agreement and Release resolves a *bona fide* dispute between the Parties that has been arduously litigated for almost three years. As discussed above, the Parties reached this settlement at the conclusion of extensive discovery and dispositive motion practice. The Parties came to the agreement through continuing arm's length negotiations, including mediation with a third-party neutral.

In reaching this settlement, the Parties took into account all known facts and circumstances, including the risk of significant delay, the expense and risks associated with both sides' pending dispositive motions. Moreover, the likely duration, complexity, and expense of future litigation would be a heavy burden on both Parties.

Additionally, the Parties faced risks with proving their claims and defenses. The parties hotly contested whether the opt-ins were similarly-situated, whether Defendant's 24-hour shift agreement violated the FLSA, and whether Defendant was equitably estopped from claiming exemption under the Railway Labor Act. Given the significant expense and risk associated with prosecuting these claims through trial, this settlement provides fair and adequate relief to the Plaintiffs. The Settlement Agreement and Release provides a fair sum in exchange for a proportionate release, guided by reasonable terms.

The allocation represents a *pro rata* distribution of alleged damages

according to calculations stipulated to by the Parties. Each Plaintiff will receive an amount proportionate to his or her recorded unpaid overtime, actual rate of pay, and dates of employment. Thus, the settlement provides each Plaintiff with an allocation strictly tailored to his or her actual damages allegedly incurred in connection with this matter, rather than a summary or average among all Plaintiffs. In exchange for their allocation, the Plaintiffs will narrowly release the claims asserted in this case. The administration of this settlement is further reasonable as the process is straightforward and not burdensome.

The service payments to the Named Plaintiffs contemplated by the Settlement Agreement and Release provide a modest payment for the additional time and energy expended by the recipients. The Named Plaintiffs were instrumental in this action. The Collective Members are receiving this settlement offer because the four Named Plaintiffs decide to pursue this case. They devoted considerable time assisting with discovery and sitting for depositions. The Collective has benefited from the actions of these individuals. The Court should find the service payments provide fair and reasonable compensation for the Named Plaintiffs' time and efforts.

"[T]he Ninth Circuit has recognized that service awards to named plaintiff in a class action are permissible and do not render a settlement unfair or unreasonable." *Thio v. Genji, LLC,* 14 F. Supp. 3d 1324, 1335 (N.D. Cal. Aug. 7, 2014) (citing *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)). "Incentive awards are routinely awarded to named plaintiffs for the services they provided and the risks they undertook during the

litigation." *Sherman v. Corizon Health, Inc.*, 2014 WL 5690024, at *3 (M.D. Fla. Nov. 4, 2014).

The Parties agree to allocate twenty-five percent (25%) of the Gross Settlement Amount to Plaintiffs' attorney fees. Twenty-five percent is the "benchmark" for class actions in the Ninth Circuit, and it is often applied to collective actions as well. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989). This amount equals $1,450,000 and represents a percentage considerably less than the thirty-three percent (33%) Plaintiffs agreed to in their legal services agreement with Counsel. Additionally, approximately $16,443 of the Gross Settlement Amount will be allocated as reimbursement for Plaintiffs' litigation costs and expenses.

Plaintiffs were represented by seasoned and capable counsel who have significant experience litigating FLSA cases including collective actions. Mr. Crone and I have a depth and breadth of experience representing plaintiffs in FLSA cases, including multi-million-dollar settlements, that was essential in reaching the present proposed settlement, as set forth in the declaration attached in support of Plaintiffs' Motion (Exhibit D).

Plaintiffs' counsel has to date spent well over 1,000 hours pursuing this collective action. Plaintiffs' counsel's labor has included, but is not limited to, filing pleadings, organizing the collective, completing discovery, including five depositions, travel between Memphis and Denver for the 30(b)(6) deposition, travel between Memphis and Phoenix for the initial hearing, complex damages calculations, and settlement negotiations.

13

This is a lawsuit involving the application of the FLSA's sleep time provision to Defendant's 24-hour shift agreement with its flight crew employees. Defendant's exemption defense under the Railway Labor Act and Plaintiffs' claim of equitable estoppel as to that defense added considerable nuance to the legal dispute. Finally, the collective nature of this suit added a layer of complexity beyond that of an individual FLSA claim.

The unique facts and novel legal questions involved in this case required that Plaintiffs obtain the advice of experienced and competent counsel. Plaintiffs' counsel competently addressed the complex issues of the case and were successful in obtaining a positive result for Plaintiffs and the proposed allocation of attorney's fees is fair and equitable under these circumstances.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order:

   (1) granting preliminary approval of the proposed Settlement Agreement and Release provided in Exhibit A to this motion;

   (2) approving the form, manner and content of the Notice of Settlement provided in Exhibit B to this motion;

   (3) approving the form, manner and content of the Request for Exclusion provided in Exhibit C to this motion;

   (4) requiring that Defendant provide the designated Settlement Administrator with collective information for purposes of mailing notice of the settlement to

Collective Members within fourteen days after entry of the preliminary approval order;

(5) requiring that the designated Settlement Administrator send a copy of the of the notice of settlement to all collective members within twenty-one days after receiving collective information from Defendant;

(6) requiring Plaintiffs' counsel to file with the Court a Motion for Final Approval of the settlement within sixty days of the original mailing of the notice of settlement;

(7) setting the Final Approval hearing for approximately ninety days after Preliminary Approval of Settlement;

(8) requiring that the Parties request that the Court sign a Final Approval Order and enter Judgment within seven days of the Court granting the Motion for Final Approval;

(9) requiring that the designated Settlement Administrator provide Collective Members with notice of final approval and entry of judgment via its website for a period of sixty days;

(10) requiring that within thirty days after the effective date of the settlement Defendant provide 50% of the Net Settlement Fund to the designated Settlement Administrator for immediate disbursement;

(11) ordering that within one year after the effective date of the settlement Defendant provide the remaining 50% of the Net Settlement Fund to the designated Settlement Administrator for immediate disbursement;

1     (12) staying all other proceedings pending Final Approval.

Respectfully Submitted,

s/ Philip Oliphant
Alan G. Crone, TN Bar No. 014285
Philip Oliphant, TN Bar No. 025990
THE CRONE LAW FIRM, PLC
88 Union Avenue, 14th Floor
Memphis, TN 38103
901.737.7740 (voice)
901.474.7926 (fax)
acrone@cronelawfirmplc.com
poliphant@cronelawfirmplc.com

and

Mike Lingle
THOMAS & SOLOMON, LLP
693 East Avenue
Rochester, NY 14607
585.272.0540 (voice)
585.272.0574 (fax)
mlingle@theemploymentattorneys.com

*Admitted Pro Hac Vice*
*Attorneys for Plaintiffs*


s/Lonnie D. Giamela
Lonnie D. Giamela (SBN 228435)
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071

Sean T. Kingston (SBN 276099)
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, CA 92614

*Attorneys for Defendant*